TIMOTHY HOWARD *v.* RODNEY D. GOULD.

*Fraud.*

A false representation, not believed to be true at the time, which a vendor of prop-erty makes for the purpose of inducing a purchase of it, or a false impression pro-duced by his words or acts for the purpose of misleading and obtaining an undue advantage, whereby a purchaser is deceived and injured, is both fraudulent and actionable.

The defendant, having information, and reason to believe that his horse had the glanders, was inquired of by the plaintiff respecting it, and replied that he supposed the horse had the horse-distemper, but that the plaintiff could examine him; and did not communicate the information he had received respecting the glanders; and the plaintiff was thereby induced to trade for the horse, and was damaged in consequence of his actually having the glanders; *it was held* that the defendant was liable to the plaintiff on account of a fraudulent suppression of material facts, which, if known, would probably have prevented the trade.

ACTION ON THE CASE for deceit in the exchange of a horse. The action was referred, and the referee reported as follows.

· " The defendant, in the fall of 1850, purchased of one Parker Bryant, a gelding horse which was diseased, and the said Bryant, at the time the defendant purchased the horse, told him, upon his inquiring what ailed the horse, that some said he had got the horse-distemper, and some said it was the glanders, but that he, Bryant, did not know what ailed him.

" The defendant, very soon after purchasing the horse of Bryant, led him over to one Jonathan Atherton, an expert in the diseases of horses, to ascertain of him what ailed the horse; Atherton told him he thought the horse had the glanders, but did not know certainly. The defendant then told him that some said it was the horse-distemper, upon which Atherton told him, if the disease was the horse-distemper as they said, it would probably terminate in the glanders, and that he wanted he should take him away as he did not want him about the premises. Within one or two days after this, the defendant drove the horse to Proctorsville, and there met the plaintiff, when they commenced a conversation about trading horses. The defendant told the plaintiff his horse was sick and not fit to use, and that he wished to get one to work with, when the plaintiff asked him what was the matter with his horse? The defendant told him that he had got the horse-distemper of the worst kind he supposed, but the plaintiff might examine him ; and the plaintiff thereupon went and looked at the horse and drove him a short distance. The plaintiff then told the defendant that he had heard the horse had the ·glanders, and asked if that was not what ailed him ; the defendant replied that he supposed it was the horse-distemper ; the plaintiff then remarked that he had had a good many horses that had the horse-distemper, and thought it might be that.

" After the plaintiff had driven the horse, Loren Howard, a son of the plaintiff, came up where the defendant and plaintiff were,

and the plaintiff told the defendant he might trade with Loren. Loren Howard then inquired of the defendant what ailed the horse, and the defendant told him, he supposed the horse-distemper, that the horse was rode to Woodstock and back and turned out, and took cold. Loren Howard then asked if the horse had not got the glanders, the defendant replied he supposed it was the horse-distemper; that he, said Loren, could examine the horse. Loren then inquired of one Jerry Butterfield, who had considerable knowledge of horses, whether he thought the horse would get well, to which Butterfield replied he could not tell. After the above conversation, the defendant and Loren Howard concluded the trade, and the parties exchanged horses. The condition of the horse was such, that it was apparent to any one that he was much diseased, but it did not appear that the defendant had any other knowledge of what the disease was than what he had derived from Bryant and Atherton, in the manner aforesaid.

" The referee finds that the horse, at the time of the trade, was diseased with the glanders, and, intending to be guided by the rules of law, also finds that the defendant should have communicated to the plaintiff, under the circumstances of the trade, as above set forth, the information he had received from Atherton and Bryant respecting the disease of the horse, and that by concealing the same he was guilty of fraud; and that the plaintiff should therefore recover of the defendant twenty dollars damages and his costs.

" But if the court should be of the opinion that, by the principles of law, from the facts as above set forth, the defendant 'was not required, under the circumstances, to disclose the knowledge he had obtained from Bryant and Atherton, and that, after directing the plaintiff and Loren Howard to examine the horse, he was legally justified in permitting the plaintiff, under the impressions he would obtain from the appearance of the horse and the statements made to him by the defendant, to trade for the horse, then the referee finds for the defendant to recover his cost."

Upon the foregoing report, the county court, May Term, 1855,— UNDERWOOD, J., presiding,—rendered judgment for the defendant, to which the plaintiff excepted.

*S. Fullam* for the plaintiff.

*J. F. Deane* for the defendant.

The opinion of the court was delivered by

BENNETT, J.　It is a common principle that a false affirmation, not believed to be true, or a fraudulent concealment of a material fact, accompanied with damage, is actionable.　If the affirmation is untrue in point of fact, and not believed to be true by the party making it, and is made for a fraudulent purpose, it is both a moral and a legal fraud; *Taylor* v. *Ashton*, 11 M. & W. 415; and in *Polhill* v. *Watter*, 3 B. & Adolphus 114, the court go the length of holding that if one makes a representation which he does not know or believe to be true, and it turns out to be false, and another person, acting upon the faith of it, is injured, he has his remedy against the person making the false affirmation.　A false affirmation, not believed to be true, is fraudulent; and the question of the liability of the person making it must depend upon the sincerity of his belief as to its truth, which will of course be for the jury to pass upon.　In the case of *Munroe* v. *Pritchett*, 16 Alabama, 785, the court go the length of holding, that if the representations are made recklessly, the party not knowing them to be true, and for the purpose of inducing the other party to make a purchase, they are actionable if accompanied with damage.　But we are not disposed, in this case, to lay the rule down in this language; but we think it safe to hold, that if the representations are false, and not believed to be true when made, and are made to induce a purchase, and a damage insues by means of them, they are fraudulent and actionable; and, to constitute a fraud, it is not necessary that a material fact should be directly misrepresented intentionally; but if a false impression is produced by words or acts, in order to mislead and obtain an undue advantage, it should be regarded as a case of manifest fraud.

When the defendant was inquired of if his horse had not got the glanders and he replied that he supposed the disease was the horse-distemper, this was, in effect, an affirmation that he did not believe the horse had the glanders, upon the principle that the affirmation of the one is the exclusion of the other.

From the facts found by the referee, and all the circumstances attending the case, I should have found no difficulty in inferring a belief in the mind of the defendant, that his horse had the glanders. But this was a question of fact.　The referee does, however, find

that, under the circumstances, the defendant was guilty of fraud by an improper suppression of facts. He bought the horse a very short time before the trade with the plaintiff for a diseased horse ; and was told by the person of whom he bought, that some said he had the horse-distemper, and some said he had the glanders though he did not pretend to know himself. But Atherton, a man skilled in the diseases of horses, upon an examination of the horse, informed the defendant he believed the disease was the *glanders*.

When the defendant undertook to answer the inquiries put to him, he was bound to make a full disclosure. It is quite evident that this is a case, where, to say the least, there was a fraudulent suppression of material facts, which, if they had been disclosed, would probably have prevented the trade. Though the plaintiff knew the horse was diseased, and had the means of examining him, yet he had not the same means of knowing the character of the disease as the defendant had ; and in this respect, they cannot be said to stand upon an equality. As this case went to a referee, no question can arise in regard to the plaintiff's right to recover, upon his present declaration, for a fraudulent suppression of facts.

The result must be, the judgment of the county court is reversed, and judgment on the report for the plaintiff.