Graham *v.* Stiles et al.

---

\* A. P. Graham *v.* William S. Stiles and Vespasian Benson.

*Warranty. Contract. Evidence. Practice. Fraud.*

The defendants sold the plaintiff a horse, and at the time informed him that the horse had been lame by spells since they purchased him and before, but they did not know what caused the lameness, or where it was. There was no warranty on the part of the defendants. In the conversation about the lameness, one of the defendants told the plaintiff that he turned the horse into the yard to play, and

\* This case was decided at the February Term, 1865.

Graham *v.* Stiles et al.

he jumped into the snow and wrenched his shoulder; this statement was untrue. The defendants also stated to the plaintiff that M., of whom they had bought the horse, told them that the horse slipped on the ice in the yard, when two years old, and was lame awhile, but never lame since, which statement was also untrue; but M. did tell them that the horse, as he supposed, slipped in the pasture, and that he thought that might have caused his lameness. The defendants told the plaintiff that they bought the horse for a sound horse, and that M. said he was sound. The referee found that the horse was foundered, which caused his lameness both when the defendants purchased him and when they sold him to the plaintiff, and that the defendants at the time of the sale and previous thereto, had become satisfied that the horse was unsound and the lameness permanent, and that they purposely and intentionally conveyed the idea to the plaintiff that there was no permanent lameness or unsoundness in the horse, and that the plaintiff purchased him believing him to be sound, and would not have done so, at the price he paid for him, had he believed him otherwise. *Held,* that it would be difficult to hold the defendants liable on the ground of affirmative misrepresentations, but that they were liable upon the ground of fraudulent concealment.

If a party would avail himself of an error of a referee in admitting evidence objected to, he should file exceptions to the report based on such error, otherwise the party can obtain relief only by an appeal to the discretion of the court, and then only when the evidence was of such decisive character that the court could see that there was danger that injustice had been done.

ACTION on the case for a false warranty by the defendants of the soundness of a horse by them exchanged with the plaintiff. The action was, by the agreement of the parties, referred to a referee, and the report of the referee is sufficiently set forth in the opinion of the court. On the hearing on said report, the court, at the December Term, 1864, KELLOGG, J., presiding, decided, *pro forma,* that the plaintiff was entitled to recover, and accordingly rendered judgment in favor of the plaintiff for the sum reported by the referee. To the said decision and judgment the defendants excepted.

*A. L. Miner* for the defendants.

The facts found by the referee show there was certainly enough said to put the plaintiff on his guard. He should then have required a warranty against the lameness, or taken the horse at his own risk. The doctrine of *caveat emptor* fully applies here. The referee has found that the defendants told the plaintiff two falsehoods: 1st. That Mann told them the horse slipped on the ice when he was two years old, which caused his lameness. Mann told them the horse slipped in the pasture. What materiality in this? If any, it favors the defendants, for slipping on the ice would be more likely to cause permanent injury than slipping in the pasture. 2d. One of the defen-

Graham *v.* Stiles et al.

dants told plaintiff that he turned the horse into the yard to play, and he jumped into the snow and wrenched his shoulder. This certainly should have put the plaintiff on his guard. Defendants had previously told the plaintiff that the horse had been lame ever since they had him. Jumping into the snow and wrenching his shoulder in addition, would be making the horse worse than he was, instead of better. Plaintiff was told he was lame before that, and could not have relied on that, as causing his entire lameness. The facts found by the referee were based on testimony wrongfully admitted.

*Butler & Wheeler* for the plaintiff.

I. The defendants knew that the horse was permanently lame and unsound, but mentioned a temporary lameness, falsified as to its cause, and purposely and intentionally conveyed the idea to the plaintiff that there was no permanent lameness or unsoundness, on which the plaintiff relied.

These facts warranted the judgment below on the ground of fradulent representations. *Wheeler* v. *Wheelock*, 34 Vt. 553 ; 34 Vt. 615.

II. The judgment below was also warrantable on the ground that the defendants fradulently concealed the material fact of permanent lameness, which they, in good faith, ought to have disclosed. *Paddock* v. *Strobridge*, 29 Vt. 470 ; *Mallory* v. *Leach*, 35 Vt. 156. Speaking of the lameness in the manner they did was not sufficient to excuse them. They spoke of it as a past ailment, not permanent.

The opinion of the court was delivered by

PECK, J. The referee finds that there was no warranty of the horse ; the plaintiff's right to recover, therefore, rests solely on the ground of fraud in the sale. It appears from the report that the referee had great difficulty in finding what representations were made by the defendants, and the same difficulty in determining what inferences should be drawn, and what conclusions should be drawn from what representations he did find proved ; and on looking at the whole report it seems that these doubts were not entirely without foundation. There is much in the report that tends to negate the idea of such affirmative false representations on the part of the defendants as to render them liable. But the court must take the facts as found by the referee, including such inferences of fact as the referee has legitimately drawn from the principal facts which he finds proved.

The question for the court is whether these facts and inferences constitute such fraud as creates a legal liability. The defendants purchased the horse of Mann in the fall of 1859, and sold him to the plaintiff in the spring of 1860. The referee does not find that the defendants represented the horse as sound, that is, he does not find any such direct representation was made; but, on the contrary, he finds that they informed him that the horse had been lame by spells since they purchased him, and that he was lame when Mann owned him, and that they did not know what caused the lameness. This, according to the finding of the referee, was substantially true. It appears that the defendants purchased the horse at the price of the horse if sound, supposing him to be sound, and that Mann at that time gave them to understand that the lameness was temporary, and that there was no real or permanent unsoundness. This shows substantially that the defendants' statement to the plaintiff that they bought the horse for a sound horse, and that Mann said he was sound, was true. But it appears that in the conversation about the lameness of the horse, one of the defendants told the plaintiff that he turned the horse into the yard to play, and he jumped into the snow and wrenched his shoulder, and that that statement was untrue. It is not found that the defendants knew it was untrue, unless it may be inferred. This, of itself, is but slight evidence of fraud, especially as Benson, the other defendant, had just before told the plaintiff that the horse had been lame by spells since they owned him, and that he could not tell the cause of the lameness, or where it was; that he sometimes thought it was in his shoulder, and sometimes in his foot. It is also stated in the report that the defendants stated to the plaintiff that Mann told them that the horse slipped on the ice in the yard, when two years old, and was lame a while, and never lame since. The referee finds that, " *the statement about slipping on the ice was untrue,* no such statement having been made by Mann." But it appears that Mann did tell them " that the horse, as he supposed, slipped and fell in the pasture, and that he thought that might have caused his lameness." It is urged by the defendants' counsel, and not without reason, that the particulars in which the referee finds this statement about slipping to be untrue, is not so far material as to constitute in law a fraud, as slipping on the ice in the yard would be

quite as likely to produce permanent lameness, as slipping in the pasture. In the absence of any finding that the defendants knew this statement to be untrue, it might fairly be attributable to mistakes as the defendants apparently could have had no motive to misrepresent in that particular.

If the defendants' liability rested solely on affirmative misrepresentations, there would be difficulty in holding them liable. But the referee finds further, that the horse was in fact foundered, and lame in his feet in consequence, at the time the plaintiff purchased him, and that such was his condition at the time the defendants obtained him from Mann, and that that was the real cause of his lameness. The referee further finds that "the defendants had, at the time of the transfer of the horse to the plaintiff, and for sometime previous thereto, become satisfied that he was unsound and the lameness permanent," although he can not find that the defendants were fully satisfied of the cause of the lameness, or of what the unsoundness consisted. The referee also finds that, " notwithstanding there was conversation, as before stated, about the lameness of the horse, the defendants not only stated the causes of such lameness in the particulars before named untruly, but that they purposely and intentionally conveyed the idea to the plaintiff that there was no permanent lameness or unsoundness of the horse, and that the plaintiff purchased him believing him to be sound, and that he would not have done so at the price he paid for him, had he believed him unsound." As the plaintiff inquired in relation to the soundness of the horse, and the defendants undertook to tell, they were bound to disclose all they knew on the subject, and the plaintiff had a right to act upon the supposition that they had done so. The defendants, while they owned the horse, having discovered by observation or otherwise that the horse was permanently unsound, had no right intentionally to conceal it, but were bound to disclose fully the whole truth. They had no right to impart a portion of their knowledge and withhold the residue for the purpose of deceiving the plaintiff. The defendants are liable and mainly upon the ground of fraudulent concealment. Under the circumstances of the case the maxim clearly applies, that the suppression of the truth is equivalent to the assertion of a falsehood.

It is insisted on the part of the defence that the referee erred in

admitting certain evidence which the report shows was objected to by the defendants. If the defendants wished to avail themselves of this objection, they should have filed exceptions to the report based on this alleged error, and interposed it by way of objection to the acceptance of the report, or by motion to set aside or recommit the report. It does not even appear that any question was raised or decided in the county court in relation to the admission of this testimony, in any form. The exceptions to the decision of the county court do not indicate that any other question was decided by that court than the question arising upon the facts found by the referee. It would be an inconvenient practice to allow questions of the admission or rejection of evidence by an auditor or referee, to be raised in this court, which were not noticed in the county court, when the effect of the error, at most, would only lead to a new trial. It is questionable whether the evidence was properly admitted, but it is not necessary to decide this question as it is not regularly before us. If this court could even relieve a party from the consequences of the wrongful admission or rejection of evidence by a referee, in a case situated as this is, it would be only by an appeal to the discretion of the court, and then only where the evidence was of such a decisive character that the court could see that there was danger that injustice had been done. In this case the evidence in question is so slight that it can not be supposed to have had much if any influence on the mind of the referee.

Judgment affirmed.