INTERNATIONAL TRUST COMPANY *vs.* SAMUEL A. MYERS & another.

Suffolk.    February 14, 1922. — June 15, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Deceit. Evidence,* Competency, Relevancy. *Bankruptcy,* Composition. *Res Judicata. Judgment. Interest. Damages,* In tort.

In an action of tort for deceit by a banking corporation against one of its depositors to whom it had lent money upon representations contained in a statement of his financial condition, findings that the statement submitted was known to the defendant to be false, that the defendant intended that the plaintiff in ignorance of the true state of affairs should rely and act on the statement and representations therein contained and that the plaintiff was thereby misled and was induced to lend the money, are warranted by evidence tending to show that, in response to a letter from the plaintiff stating that "we have received no statement from you since January 1, 1915," and requesting that "you send us on the enclosed form statement of your financial condition, which

statement is for our exclusive use and will be treated as strictly confidential," the defendant had sent the statement which purported to show "our Financial Statement taken from Inventory January 1, 1916," and among other assets showed accounts receivable amounting to $58,425.06, and that at that time to the defendant's knowledge an investment corporation held a valid assignment of the accounts receivable as collateral security for money advanced on merchandise sold and shipped by the defendant to customers, in reliance upon which, on receiving duplicate invoices, the investment corporation had lent the defendant eighty per cent of the amount shown by the invoice, for which it charged interest at the rate of sixteen per cent a year; that the money was lent by the plaintiff to the defendant in March and that, the next year, the defendant was adjudicated a bankrupt.

The admission in evidence of testimony of the vice president of the plaintiff at the trial of the action above described, descriptive of the previous and similar course of dealing between the parties in the procurement of loans, and that, if he had been informed of the assignment and of the rate of interest payable thereunder, he would not have made the loans in question, and the admission of a printed form of statement to be made to the plaintiff by a borrower, a copy of which, even if the original was not produced, the jury could find had been enclosed in a letter sent by the vice president to the defendant, although it was not used by him, were proper, such evidence being competent to show that, if the vice president had known the truth, or if the misrepresentations had not been made, the money would not have been lent by the plaintiff to the defendant.

An answer of the defendant, at the trial above described, to the question "Didn't you know that the bank was trying to find out the condition of your business financially?" "Well, I presume so. I do not know what was in their minds," was admissible.

In an action of the character described above, the concealment of material facts with intention to mislead and defraud stands no better than the affirmation of a material misrepresentation.

A judgment of a District Court of the United States upon an offer of composition in bankruptcy proceedings, affirmed on an appeal to the Circuit Court of Appeals, finding "that the bankrupt has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to his discharge," and ordering a confirmation of the composition against objection by a creditor on the ground that the bankrupt previous to his adjudication had obtained money from him by false and fraudulent representations and deceit, is not a bar to an action of tort for the same acts of deceit brought by the creditor against the bankrupt for a balance left unpaid after the creditor had received his percentage according to the decree of composition.

In an action of the character above described, the jury in their discretion may add to the amount of damage assessed by them interest from the date of the writ.

TORT for deceit. Writ dated November 6, 1917.

In the Superior Court, the action was tried before *Dubuque,* J. Material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings:

"1. On all the evidence, the plaintiff is not entitled to recover, for the several reasons hereinafter stated."

"8. The mere failure to state that the accounts had been assigned as collateral security to the Commercial Investment Trust would not make the statement false."

"10. The finding of the United States Court in the trial of the plaintiff's objections to the confirmation of the defendants' offer in composition establishes conclusively for the purposes of the present case that the statement was not false.

"11. The finding of the United States Court in the trial of the plaintiff's objections to the confirmation of the defendants' offer in composition establishes conclusively for the purposes of the present case that the statement was not made with an intention to deceive.

"12. The discharge of the defendants by the confirmation of the composition is a bar to this action."

The rulings were refused. The defendants excepted to the refusal of the requests for rulings and to a portion of the charge instructing the jury "that interest is to be added from the date of the writ." The jury found for the plaintiff in the sum of $14,304.49; and the defendants alleged exceptions.

*E. F. McClennen,* for the defendants.

*J. R. Lazenby,* (*G. L. Wilson* with him,) for the plaintiff.

BRALEY, J. The defendants, manufacturers and sellers of clothing, were depositors of the plaintiff from which from time to time for a number of years they borrowed money for use in their business. The plaintiff before making loans required of the defendants and they submitted each year a statement of their financial condition which supplied the necessary information on which the plaintiff could determine whether the credit solicited could safely be given. The defendants on March 27, 1916, having furnished such statement received on their promissory notes for $2,000 each, $20,000, and in 1917, while the notes were still unpaid, became bankrupt, and offered a composition to their creditors. The plaintiff proved its claim on the notes and received the dividend. And the composition having been confirmed, the defendants were discharged from their debts "other than those agreed to be paid by the terms of the composition and those not affected by a discharge." U. S. St. 1898, c. 541, §§ 12e, 14c.

But § 14 (3) provides that where a bankrupt has "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit" the discharge is not a bar to a subsequent suit by the party defrauded to recover damages for deceit. The plaintiff accordingly sues in tort to recover as damages the difference between the dividend received and the face of the notes.

The first question is whether there was evidence which warranted the jury in finding that the statement submitted was known to the defendants to be false, and that because of the fraud practised upon it the plaintiff was induced to lend the money. The statement signed by the defendants purported on its face to be a copy of "our Financial Statement taken from Inventory January 1, 1916," and among other assets showed accounts receivable amounting to $58,425.06. The evidence need not be reviewed in detail. There was plenary proof that when the statement was furnished and accepted the Commercial Investment Trust held a valid assignment of the accounts receivable as collateral security for money advanced on merchandise sold and shipped by the defendants to customers on which upon receiving duplicate invoices the investment company lent them eighty per cent of the amount shown by the invoice, for which it charged interest at the rate of sixteen per cent a year. The defendant Samuel A. Myers, managing partner of the firm, called by the plaintiff as a witness testified, that he did not at any time disclose to the plaintiff the existence of this agreement although he had previously received a letter from the plaintiff's vice president stating that "we have received no statement from you since January 1, 1915," and requesting that "you send us on the enclosed form statement of your financial condition, which statement is for our exclusive use and will be treated as strictly confidential," and in response he signed and submitted the itemized statement on which the loans were obtained. The jury could find the defendants intended that the plaintiff in ignorance of the true state of affairs should rely and act on the statement or representations therein contained, and that the plaintiff was thereby misled.

The evidence of the vice president descriptive of the previous and similar course of dealing between the parties in the procurement of loans, and that if he had been informed of the assignment, and

of the rate of interest payable thereunder he would not have made the loans in question, and the admission of a printed form of statement to be made by the borrower, a copy of which even if the original was not produced, the jury could find had been enclosed in a letter sent by him to the defendants although not used by them, was competent for the consideration of the jury as showing, that if he had known the truth, or if the misrepresentations had not been made, the money would not have been lent. The plaintiff was not only deceived, but acted in reliance on the false statement. The answer of the witness Myers, one of the defendants, to the question "Didn't you know that the bank was trying to find out the condition of your business financially?" "Well, I presume so. I do not know what was in their minds," also was admissible. It was relevant on the question whether the statement was false and the defendants knew that it was false. The concealment of material facts with intention to mislead and defraud stands no better than the affirmation of a material misrepresentation.

We refer only to a few cases sustaining what has been said on this branch of the case. *Safford* v. *Grout,* 120 Mass. 20. *Stewart* v. *Joyce,* 201 Mass. 301, 310, 311, and cases there cited. *Robinson* v. *Richards,* 209 Mass. 295. *Harvey* v. *Squire,* 217 Mass. 411, 416. *Williams* v. *Wood,* 14 Wend. 126. *Stubly* v. *Peachboard,* 68 Mich. 401.

But even if the debt having been fraudulently contracted was not discharged by the proceedings in composition, and the plaintiff was entitled to go to the jury on the issue of fraud and misrepresentation, *Friend* v. *Talcott,* 228 U. S. 27; *Talcott* v. *Harris,* 93 N. Y. 567, the amended answer pleads in bar, "that in proceedings originally instituted in the United States District Court for the District of Massachusetts on the twenty-seventh day of January, 1917, . . . the plaintiff in this action participated in said bankruptcy proceedings, and filed his objections to the confirmation of the composition, a copy of which objections is hereto annexed and made a part of this answer, and raised the same issues as now sued on by the plaintiff in this action, which issues were heard between the parties and determined in favor of the present defendants; that all matters and things contained in this suit were adjudicated upon in said suit . . . and appealed by the

plaintiff to the Circuit Court of Appeals . . . and all matters and things contained in this suit were adjudicated upon and finally determined in favor of the defendants." The transcript of these proceedings, which plainly was admissible, *Foye* v. *Patch*, 132 Mass. 105, leaves no doubt that the plaintiff appeared and opposed the granting of the defendants' discharge on substantially the same grounds now relied on to sustain an action for deceit, and introduced evidence and was fully heard in support of its contention. The District Court found in so far as material here, "that the bankrupt has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to his discharge," and entered an order of confirmation of the composition. The plaintiff appealed to the Circuit Court of Appeals which sent down a mandate affirming the order of the District Court. *International Trust Co.* v. *Myers*, 245 Fed. Rep. 110, 112.

The second question therefore is, whether the order confirming the composition is conclusive, that the representations were neither false nor fraudulent within the purview of the bankruptcy act. We are unable in principle and on the material facts to distinguish the case at bar from *Friend* v. *Talcott*, 228 U. S. 27. The facts in that case were that a partnership composed of the plaintiff Friend and others was adjudicated bankrupt and offered a composition. The defendant Talcott, a creditor who proved and had allowed a claim in contract, opposed confirmation of the composition, on the ground that the bankrupts had obtained credit from him by reason of false reports of the financial condition of the firm. The objections however were not sustained because the false statement was made to a commercial agency instead of being directly made to Talcott, and the composition was confirmed. Talcott then brought an action to recover damages suffered by reason of the alleged false representations which had been passed upon in the composition proceedings. The defendants pleaded the general issue, and that the plaintiff was precluded by the former adjudication. *Talcott* v. *Friend*, 179 Fed. Rep. 676. The plaintiff having prevailed the defendants petitioned for a writ of certiorari, which having been granted, the case was heard and determined on the record the substance of which has been stated. The opinion by Chief Justice White, after pointing out that Talcott's participation in the composition could not defeat the

action, disposes of the issue of *res judicata* in these words: "To constitute *res judicata*, it is elementary that there must be identity of cause between the two cases. In view of the text of the bankrupt law, the distinction which it makes between the general discharge and the right of a particular creditor to be exempt from the operation of such discharge it needs but statement to demonstrate the difference of cause which necessarily obtains between determining on the one hand in favor of the bankrupt whether he is entitled to a general discharge and of deciding on the other, as between a particular creditor and the bankrupt, whether the claim of that creditor is of such a character as to be exempt from the operation of a discharge. Nothing could more clearly emphasize the distinction which exists between the two subjects — that is, the granting of a general discharge and the question after it is granted whether a particular debt is exempted by law from its operation — than does the provision of the statute (§ 14c, 30 Stat. 550) authorizing a general discharge as the result of an approval of a composition, since it expressly reserves from the operation of such discharge of the bankrupt from his debts, 'those not affected by a discharge.' . . .

"Conceding for the sake of argument that the facts which were alleged as the basis of the opposition to the approval of the composition were sufficient, had the law been rightly applied, to have prevented the approval of the composition, such concession would afford no ground for holding that because one case in matter of law was erroneously decided, that such decision should conclusively establish the duty to erroneously decide another and distinct case. If, on the other hand, it be conceded that the composition was rightfully approved, as the determination of that subject did not under the very terms of the statute involve passing upon the separate and distinct claim of creditors to be exempt from the operation of the discharge, it results that in no view of the case is there merit in the contention as to *res judicata*. The contentions urged in many forms based upon the recitals in the order of confirmation of the composition made conformably to the statute as to the absence of fraud or other wrong doing, . . . is but a reiteration of the contention as to *res judicata* which we have shown to be without foundation."

The presiding judge rightly refused the defendants' first request,

that on all the evidence the plaintiff could not recover. The eighth request that the mere failure to state that the accounts had been assigned as collateral security to the Commercial Investment Trust would not make the statements false, could not be given. The question of the defendants' deceit was for the jury on all the evidence. The tenth, eleventh and twelfth, requests asking for rulings that the finding of the court at the trial of the plaintiff's objections to the confirmation of the composition establishes conclusively for the purposes of the present case that the statements were not false, and that it was not made with intent to deceive, and that the discharge of the defendants is a bar to this action, were inaccurate statements of the law applicable to the case for reasons previously stated.

The jury also were rightly permitted to compute interest on damages from the date of the writ to the date of verdict. The amount recoverable which could be calculated had been obtained and withheld from the plaintiff by the defendants' fraud. The jury accordingly could consider these circumstances and in their discretion increase the damages by the addition of interest. *Frazer* v. *Bigelow Carpet Co.* 141 Mass. 126, 127, 128. *Peabody* v. *New York, New Haven & Hartford Railroad,* 187 Mass. 489, 492, 493.

*Exceptions overruled.*