NEWELL BROTHERS *v.* ZUAR HANSON.

Special Term at St. Johnsbury, April, 1923.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed January 4, 1924.

*Assignments—Assignment of Chose in Action Vests in Assignee Equitable Title to Securities—Assignor as Nominal Party— Assignee of Conditional Sale Note May Foreclose Lien on Default—Review—Fraud—Direct Evidence of Fraud Unnecessary—When Concealment of Material Facts May Not Be Fraudulent—Fraudulent Concealment—Seller's Duty to Disclose Encumbrance—Presumption on Review That Allegations Conform to Proof.*

1.  In the absence of any provision to the contrary, the unqualified assignment of a chose in action vests in the assignee an equitable title to all such securities and rights as are incidental to the subject-matter of the assignment.
2.  Under the common law rule, the assignor of a chose in action is a mere nominal party, and an action thereon may be prosecuted without his knowledge and even against his consent.
3.  A bank, having acquired a conditional sale note, indorsed in blank, as a holder in due course, which reserved the title to certain personal property therein described in the seller until the conditions of the note were complied with, on default in payment of the note had the right to foreclose such lien as assignee of the note, even if it acquired by the assignment only an equitable title.
4.  Claimed errors advanced for the first time when a case is in Supreme Court on review will not be considered.
5.  In an action of tort for fraud evidence *held* to make the question of fraudulent concealment of encumbrance by the defendant one of fact for the jury.
6.  Direct evidence of fraud is not necessary, but it may be inferred from the circumstances.
7.  While fraud may be committed by the suppression of truth as well as by the suggestion of falsehood, mere silence or failure

to disclose known facts though material may not be fraudulent where the persons are dealing at arm's length, as where the facts are equally within the means of knowledge of both, in which situation neither is required to speak in the absence of inquiry respecting such matters.

8. The test of liability for failure to disclose facts material to the transaction is some duty, legal or equitable arising from the relations of the parties; and when such duty is present failure to disclose a material fact with the intention to mislead or defraud is equivalent to a fraudulent concealment of the fact and stands no better than the affirmation of a material misrepresentation.

9. Circumstances *held* to make it the duty of a seller of a team of horses to disclose the existence of an outstanding lien upon them.

10. In the Supreme Court on exceptions, when the Court has not been furnished with a copy of the complaint, it will be assumed that the allegations conform to the proof.

ACTION OF TORT for fraudulent concealment of an encumbrance. Plea, general issue. Trial by jury at the June Term, 1922, Caledonia County, *Moulton*, J., presiding. Verdict and judgment for the plaintiffs. The defendant excepted. The opinion states the case. *Affirmed.*

*W. W. Reirden* and *David E. Porter* for the defendant.

The assignee of a note, without any conveyance to him of the security, cannot maintain an action at law in his own name for the conversion of the security. *Batchelder* v. *Jenness*, 59 Vt. 104; *Buzzell* v. *Cummings*, 61 Vt. 213.

The transfer of a note without an assignment of the lien does not transfer the security. *French* v. *Haskins*, 9 Gray 195; *Crain* v. *Paine*, 4 Cushing 483; *Simpson* v. *Montgomery* (Ark.), 99 A. D. 228; *Shnebly and Lewis* v. *Ragan* (Md.), 28 A. D. 195; *Hatch* v. *Spears*, 27 Ark. 229, 11 A. R. 784; *Richards* v. *Leaming*, 27 Ill. 481, 81 A. D. 239; *Briggs et al.* v. *Hill*, 6 How. 362, 38 A. D. 441; *Hall's Executors* v. *Click*, 5 Ala. 363, 39 A. D. 327; *Law* v. *Butler* (Minn.), 9 L. R. A. 856; *Jackman* v. *Hallock*, 1 Ohio 318, 13 A. D. 627; *Neil* v. *Kinney*, 11 Ohio St. 67, 5 Corpus

Juris 950, 27 R. C. L. 585; *Burch* v. *Pedigo* (Ga.), 54 L. R. A. 808; *Winton Motor Carriage Co.* v. *Broadway Auto Co.*, 65 Wash. 650, 37 L. R. A. (N. S.) 71; *Domestic Sewing Machine Co.* v. *Arthurhultz*, 63 Ind. 322; *Hyde* v. *Courtwright*, 14 Ind. App. 106, 42 N. E. 647.

There is no implied warranty of title where the seller does not have possession of the property sold. *Patte* v. *Pellon*, 48 Vt. 182; *Reynolds* v. *Roberts*, 57 Vt. 392, 24 R. C. L. 185; *Scott* v. *Hix*, 62 A. D. 458.

*James B. Campbell* and *Harry Blodgett* for the plaintiff.

The assignment of a note or debt carries with it the security for its payment, without any formal assignment or delivery of the latter. *National Live Stock Bank of Chicago* v. *First National Bank of Geneseo*, 203 U. S. 296, 51 L. ed. 192, 27 Sup. Ct. 79; *Mosher, Exr.* v. *Allen*, 16 Mass. 450; *Esty & Green* v. *Graham*, 46 N. H. 169; *Cutting & Whittemore* (N. H.), 58 Atl. 1098; *Ross-Meehan Brake-Shoe Foundry Co.* v. *Pascagoula Ice Co.*, 72 Miss. 608, 18 So. 364; *Spoom* v. *Frambrach* (Minn.), 86 N. W. 106; *Kimball* v. *Mullon*, 48 N. W. 1100; *Townsend* v. *Southern Product Co.* (Ga.), 56 S. E. 436; *Rodgers* v. *Backman* (Cal.), 43 Pac. 448; *Barton* v. *Grosclose* (Idaho), 81 Pac. 623; *Standard Steam Laundry* v. *Dole* (Utah), 61 Pac. 1103; *Nye* v. *Daniels*, 75 Vt. 81; *Burnell* v. *Marvin*, 44 Vt. 277.

Under some circumstances a suppression of truth is equivalent to an assertion of falsehood. *Paddock* v. *Strobridge*, 29 Vt. 470; *Graham* v. *Stiles*, 38 Vt. 578; *Maynard* v. *Maynard*, 49 Vt. 297; *Reynolds* v. *Roberts*, 57 Vt. 392; *Hughes* v. *Robertson*, 15 A. D. 104, and note; *Stevens* v. *Blood*, 90 Vt. 81.

TAYLOR, J. The action is tort to recover damages for the alleged fraud of the defendant in the sale of a pair of horses. Trial was by jury with verdict and judgment for the plaintiffs. The defendant argues exceptions to the admission of certain evidence, to the overruling of his motion for a directed verdict, and to certain portions of the charge.

The defendant is the son of C. H. Hanson, now deceased, who in his lifetime was engaged in buying and selling horses, and at the time of the sale in question was employed by his father in

that business. It appeared in evidence that in December, 1918, C. H. Hanson had sold this pair of horses, then known as the Hodgdon horses, to one Chesley taking his note for $325, in part payment therefor. The note was payable to C. H. Hanson or order on demand, and contained the recital that the note was given for the horses, describing them, conditionally sold and delivered by Hanson to Chesley, and that the property was to remain the property of said Hanson, and subject to his control at all times until the note was wholly paid. The so-called lien note was duly recorded. February 26, 1919, the Barton Savings Bank and Trust Company bought the note from Hanson at its face value, and it was delivered to the bank bearing the latter's indorsement in blank. Two days later Chesley was notified by the bank that it held the note. Still later, and before March 28, 1919, Hanson and Chesley had a settlement in which the horses were sold back to Hanson, and the latter agreed to take up the note and send it to Chesley. This was not done. On the last named date, Charles Newell, one of the plaintiffs, had negotiations with the defendant for the exchange or purchase of a pair of horses. The defendant showed him the horses formerly sold to Chesley, which the plaintiffs finally purchased for $425, which represented their full value. They paid the defendant a part of the purchase price, and a few days later sent him a check drawn to him personally for the balance. The defendant turned over the purchase money to his father. C. H. Hanson was not present during any of the negotiations, and the plaintiffs' evidence tended to show that they were ignorant of the fact that he had any connection with the transaction. The plaintiffs were not told of the existence of the outstanding lien note, and bought the horses supposing they were free from encumbrance. C. H. Hanson died in February, 1920. The plaintiffs first learned of the existence of the lien note in June, 1920, when the bank instituted proceedings to enforce the lien. It placed the note in the hands of a deputy sheriff for collection with instructions to sell the horses if necessary. The officer demanded payment of Chesley and later of the plaintiffs, and, the same being refused, advertised and sold the horses at sheriff's sale in satisfaction of the lien note.

Several of the exceptions argued are, in one form or another, directed to the same question, and are not found to re-

quire separate treatment. It was not claimed that the defendant made any false statements inducing the sale. The fraud relied upon is the alleged fraudulent concealment of the fact that the horses were encumbered by the lien note then held by the bank. The principal claim in defense was that the transfer of the lien note to the bank did not transfer the legal title to the security; that the bank had no right as the assignee of the note to the lien on the horses, nor any right to foreclose the lien; and that the plaintiffs had not been disturbed in their possession of the horses by the defendant nor by C. H. Hanson, the holder of the lien, or any one representing him. In substance the defendant's claim is that the plaintiffs were not damaged by anything that he did, but by the wrongful act of the bank for which it alone would be liable. It is not claimed that the note in the hands of the bank was not a valid obligation, nor that the bank was not entitled to the standing of a holder in due course. On the contrary, the note was treated as valid, and it was conceded that the bank had an equitable interest in the security; but it was argued that such interest did not afford the basis of a legal proceeding in the name of the bank.

On the record we need consider only whether the defendant is excused on the theory that the foreclosure of the lien was unlawful. It is argued here that the blank indorsement of the note gave the bank no right to the lien reserved by C. H. Hanson and no interest in the property described in the note. However, the cases relied upon do not support this contention. In *Batchelder v. Jenness,* 59 Vt. 104, 7 Atl. 279, the owner of a farm had conveyed it to one Dunn, retaining in the deed a lien on the growing crops to secure certain notes given for the purchase money. The defendant, as sheriff, attached the crops on a writ in favor of a third party against Dunn. The plaintiff who had bought one of the purchase money notes, brought a suit in trespass and trover for the conversion of the crops, claiming to hold the same under the lien reserved in the deed of the farm. While it was there held that the assignee of a note, without any conveyance to him of the security except such as the sale of the note effected, could not maintain an action at law in his own name for the conversion of the security, it is made clear that by the purchase of the note the plaintiff acquired an equitable right in the crops, while the legal title thereto remained in the grantor of the farm,

but was held by him for the plaintiff's benefit. Nor is the defendant's position supported by *Buzzell* v. *Cummings*, 61 Vt. 213, 18 Atl. 93. The action was trover for the recovery of a water wheel sold by the plaintiff to one Burton, for which the latter gave a note in part payment, and by a separate writing agreed that the water wheel was to remain the property of the plaintiff until the note was paid. The wheel was installed in a mill which later came into the possession of the defendant under a quitclaim deed. The note was discounted by Buzzell at the First National Bank of St. Johnsbury, and the lien writing was delivered to the bank without written assignment. Burton having failed to pay the note, the bank made demand for the water wheel, and on refusal sued in Buzzell's name for the conversion. In disposing of the claim that the suit could not be maintained in Buzzell's name it was held that there was not such a conveyance of the property itself by Buzzell as would enable the bank to maintain an action of trover in its own name—that there must be an actual conveyance of the security to the assignee in order that he may maintain an action in his own name for its conversion. But the case plainly recognizes the right of the assignee of such a note to institute and prosecute the appropriate action in the name of the holder of the legal title.

[1-4]    These cases accord with the rule generally recognized that, in the absence of any provision to the contrary, the unqualified assignment of a chose in action vests in the assignee an equitable title to all such securities and rights as are incidental to the subject-matter of the assignment. 2 R. C. L. 633; *Jenkinson* v. *New York Finance Company*, 79 N. J. Eq. 247, 82 Atl. 36; *Brainard, etc., Quarry Co.* v. *Brice*, 250 U. S. 229, 63 L. ed. 951, 39 Sup. Ct. 458; *Beaver Tr. Co.* v. *Morgan*, 259 Pa. 567, 103 Atl. 367; *Burke* v. *Wilson*, 107 Wash. 454, 181 Pac. 904; *Smith* v. *Wagner*, 106 Misc. Rep. 170, 174 N. Y. S. 205. It does not avail the defendant that an action at law to enforce the assignee's rights under such an assignment would, in the absence of a statute to the contrary, have to be brought in the name of the assignor. Under the common law rule, the assignor is mere nominal party. The action could be prosecuted without his knowledge and even against his consent. *Farmers & Mechanics Bank* v. *Humphrey*, 36 Vt. 554, 86 A. D. 671. But such was not the remedy pursued by the bank. Assuming that

it had an equitable interest in the security, there was no apparent legal objection to the course pursued to enforce the lien. In such circumstances the plaintiffs would have no remedy against the bank as a wrongdoer. It could have justified the seizure and sale of the horses as assignee of the note, even if it acquired by the assignment only an equitable title. *Smith* v. *Atkins,* 18 Vt. 461; *Batchelder* v. *Jenness, supra; Nye* v. *Daniels,* 75 Vt. 81, 53 Atl. 150. We have not considered whether the earlier holdings respecting the right of an assignee to sue in his own name are affected by the Practice Act (G. L. 1800) which has enlarged his power to maintain such an action, but have considered the question as it was raised in the court below. Such of the defendant's claims as are advanced for the first time in this Court are, of course, outside the scope of this review.

[5, 6] Certain exceptions are the basis of a claim that there was no evidence tending to show that the defendant knew at the time he sold the horses to the plaintiffs that the lien note was outstanding and had not been returned to Chesley, and no evidence of any "active concealment" on the part of the defendant, without which it was urged there could be no fraud. While the defendant testified that he knew nothing about the lien note until long after the horses were sold to the plaintiffs, there was ample evidence, direct and circumstantial, to make the question of fradulent concealment of the encumbrance one of fact for the jury. Chesley had testified to conversations with or in the presence of the defendant prior to the sale respecting the return of the note, and the evidence tended to so connect the latter with the note transaction that the jury would be justified in finding, as they must have found, knowledge on his part that the bank still held the note. No excuse was offered for the failure to disclose the encumbrance except the denial of knowledge. The jury could also well find from the evidence that the defendant intentionally concealed the existence of the lien from the plaintiffs. Direct evidence of the fraud was not necessary, but it could be inferred from the circumstances. *Stevens* v. *Blood,* 90 Vt. 81, 96 Atl. 697.

[7, 8] The law distinguishes between what is termed active and passive concealment. *Compton* v. *Beedle,* 83 Vt. 287, 298, 75 Atl. 331. Mere silence, or mere failure to disclose known facts though material, may not be fraudulent. Where persons are

dealing "at arms length," as where the facts are equally within the means of knowledge of both, neither is required to speak, in the absence of inquiry respecting such matters. But fraud may be committed by the suppression of truth as well as by the suggestion of falsehood. The test of liability for failure to disclose facts material to the transaction is some duty, legal or equitable, arising from the relations of the parties, such as that of trust or confidence, or superior knowledge or means of knowledge. When in the circumstances of the particular case such duty is present, failure to disclose a material fact with intention to mislead or defraud is equivalent to a fraudulent concealment of the fact and stands no better than the affirmation of a material misrepresentation. *International Trust Co.* v. *Myers,* 241 Mass. 509, 135 N. E. 697; *Windram Mfg. Co.* v. *Boston Blacking Co.,* 239 Mass. 123, 131 N. E. 454, 17 A. L. R. 669; *Rothmiller* v. *Stein,* 143 N. Y. 581, 38 N. E. 718, 26 L. R. A. 148; *Edward Malley Co.* v. *Button,* 77 Conn. 571, 60 Atl. 125; *Boileau* v. *Records,* 165 Iowa 134, 144 N. W. 336; *Manuel* v. *Shafer,* 135 Wis. 241, 115 N. W. 801; *Cherry* v. *Brizzolara,* 89 Ark. 309, 116 S. W. 668, 21 L. R. A. (N. S.) 508; *National Park Bk.* v. *Louisville & N. R. Co.,* 199 Ala. 192, 74 So. 69; *Benoit* v. *Perkins,* 79 N. H. 11, 104 Atl. 254; *Palmiter* v. *Hackett,* 95 Or. 12, 185 Pac. 1105, 186 Pac. 581; *Strong* v. *Repide,* 213 U. S. 419, 53 L. ed. 583, 29 Sup. Ct. 521; *Chicora Fertilizer Co.* v. *Dunan,* 91 Md. 144, 46 Atl. 347, 50 L. R. A. 401; *Satler* v. *Aviation Salvage Co.,* 129 Miss. 217, 91 So. 340, 26 A. L. R. 987; *Corry* v. *Sylvia y Cia.,* 192 Ala. 550, 68 So. 891, Ann. Cas. 1917E, 1052.

This is the doctrine of our own cases. In those cited below a recovery for deceit in the sale of animals was sustained for failure of the seller to disclose the fact, known to him but unknown to the purchaser, that the animal was affected with a hidden disease, or was worthless for the purpose for which it was bought, where the defect was not visible and there were no external indications calculated to excite suspicion of its existence. In such circumstances, the seller was held to be guilty of actionable fraud when he knew or had reason to believe that the purchaser would not buy if he knew of the defect and still sold at such price as the animal seemed to be worth. *Howard* v. *Gould,* 28 Vt. 523, 67 A. D. 728; *Paddock* v. *Strobridge,* 29 Vt. 470; *Maynard* v. *Maynard,* 49 Vt. 297. *Connecticut Gen. Life*

*Ins. Co.* v. *Chase,* 72 Vt. 176, 47 Atl. 825, 53 L. R. A. 510, was an action to recover for the breach of a bond executed by the defendant Chase as principal and by other defendants as sureties. Chase was employed by the plaintiff as its agent. Before the execution of the bond he had misappropriated funds belonging to the plaintiff, and had borrowed money to adjust the shortage, which facts were known to plaintiff's representative who procured the bond. The latter failed to disclose these facts to the sureties. It was held to be the plaintiff's duty to make such a disclosure; and that as the plaintiff, through its agent, then knew or had reason to believe that the intended action of the sureties in signing the bond would probably be affected thereby, to allow them to sign it without giving such information was, in the circumstances, not acting in good faith and was such a fraud upon their rights as would operate to discharge the sureties from liability upon the bond. See, also, *Fitzsimmons* v. *Joslin,* 21 Vt. 129, 52 A. D. 46; *Graham* v. *Stiles,* 38 Vt. 578; *Mallory* v. *Leach,* 35 Vt. 156, 82 A. D. 625; *Ryder* v. *Ryder,* 66 Vt. 158, 28 Atl. 1029, 44 A. S. R. 833; *Richmond* v. *Standclift,* 14 Vt. 258.

[9] In the circumstances it was plainly the duty of the defendant to disclose the existence of the outstanding lien upon the horses, and on the evidence it was a question for the jury whether the failure to make such disclosure was fraudulent and so actionable. The plaintiffs were ignorant of the defect in title without fault on their part, which and its effect upon the sale must have been known to the defendant. Good faith required that he should disclose the true state of the title to prevent the plaintiffs' being defrauded. In this respect the case is very much like *Corry* v. *Sylvia y Cia., supra,* where it was held that one who sells a ship and freight on her then voyage withholding information concerning an outstanding lien in the form of a disbursement draft was guilty of actionable fraud when the purchaser had no means of acquiring knowledge thereof. See, also, *Drake* v. *Nunn* (Ala. Sup.), 97 So. 211.

[10] As an additional ground of the motion for a directed verdict it was claimed that, while "classed as an action of fraud and deceit," it was really an action of false warranty; and that no express warranty had been proved, and there could be no implied warranty of title in the sale of property not in the possession of the vendor. We find no occasion to inquire into

20

the merits of this claim.  We have not been furnished with a copy of the complaint, in the absence of which we must assume that the allegations conform to the proof which tends to support an action for fraudulent concealment.  It is unnecessary to consider the defendant's exceptions more in detail.  Enough has been said to show that they should be overruled.

*Judgment affirmed.*