No. 21367.

In the Matter of the Determination of Interests in the Land of Isaac Cisneros, deceased, Kate Cisneros, Rose Cisneros Abeyta, Mabel Cisneros Roman, Maria Cisneros Borrego, Petitioners *v.* Jose Rafael Cisneros and Ramos Cisneros, Respondents.

(430 P.2d 86)

Decided July 17, 1967. Rehearing denied August 14, 1967.

246

PHELPS, FONDA, HAYS and WILLS, for plaintiffs in error.

SAM T. TAYLOR, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE KELLEY.

IN April 1954, in purported compliance with C.R.S. '53, 152-4-1, Jose Rafael Cisneros (Jose) filed in the County Court of Huerfano County a petition to determine heirship, alleging that he was an heir of Isaac Cisneros; that Isaac Cisneros died intestate, January 18, 1949, a resident of Huerfano County; that Isaac, at the time of his death, was the owner of specified real property of the value of less than $2000; *that the sole heirs of Isaac Cisneros were Jose and Ramos Cisneros* (Ramos), sons, and that each of them was entitled to an undivided one-half interest in the real property.

Pursuant to C.R.S. '53, 152-4-2, the clerk of the county court issued a notice which was published in accordance with the statute. In due time (July 6, 1954) a decree was entered in which the jurisdictional findings were made and that *Isaac's sole and only heirs at law were Jose and Ramos,* and the court further found that each was entitled to an undivided one-half interest in the described real estate.

On November 4, 1963, Kate Cisneros, Rose Cisneros Abeyta, Mabel Cisneros Roman and Maria Cisneros Borrego (collectively sometimes referred to as "Kate") filed a "Petition to Set Aside Decree of Determination

of Heirship," alleging the facts set forth in the first two paragraphs of this opinion, except that, in addition to Jose and Ramos, it alleged that Isaac's heirs included "his wife, Kate Cisneros and his children," the remaining petitioners.

The petition also alleged that the "Petition for Determination of Heirship in the captioned matter falsely and fraudulently" listed "as the sole and only heirs of Isaac Cisneros, Jose Rafael Cisneros, son, and Ramos Cisneros, son."

Continuing, the petition alleged that at the time the petition for determination of heirship was filed Jose "well knew that the lawful heirs of Isaac Cisneros included" Kate, Rose, Mabel and Maria, but that in spite of this knowledge and "with the intent to defraud the petitioners herein, the said Jose * * * listed only himself and his brother Ramos * * * as the lawful heirs" of Isaac, and that the court entered its decree based upon the false and fraudulent allegations of the petition.

The petition next alleges that none of the petitioners had any knowledge of the proceedings or the decree until May 3, 1963, when Jose "advised the petitioners for the first time that he had caused the said petition to be filed and that he and his brother, Ramos, were now the legal title holders of the lands of Isaac Cisneros."

Kate claims that by the failure of Jose to cause service of the notice of the proceedings to be made upon each of them personally that they have been denied "due process"; and that the real estate not having been conveyed out by Jose and Ramos, the setting aside of the judgment and amending the decree will not injure any third party. This last fact is a circumstance which is of significance and should be read into any flat statements of law which are pronounced in this opinion.

In response to the petition, Jose and Ramos filed a motion to dismiss, in pertinent part, as follows:

"1. That said petition is sham and frivolous;

"2. That the determination of interests in the land of

Isaac Cisneros was adjudicated by this Court on July 6, 1954, and that this matter is now res adjudicata.

"3. That by statute the petitioners are now barred from bring [sic] this action to set aside the decree of this Court entered on July 6, 1954.

"4. That the petitioners are guilty of laches."

On April 14, 1964, the court granted the motion and, in support thereof, found, in pertinent part, that:

"* * * the petition for the determination of interests in the lands of Isaac Cisneros was duly published on May 4, 11, 18, 25, and June 1, 1954; said notice was directed to Jose Rafael Cisneros and Ramos Cisneros, heirs at law of Isaac Cisneros, deceased *and to all other persons who are or claim to be heirs of said decedent and to all persons interested; none of the present petitioners appeared claiming heirship*; * * *.

"This Court concludes as a matter of law that the petition should be dismissed for the reasons that said petition appears to be *sham and frivolous* and that this matter is now *res adjudicata* and that petitioners are *barred by our statutes* from seeking redress at this late hour. *If* the petitioners were heirs at law of Isaac Cisneros they became vested with those rights on January 18, 1949, yet the petitioners failed to exercise those rights for a period of almost fifteen years * * *." (Emphasis added.)

■■ It is noted that the trial court in its decree relied, in part, upon C.R.S. '53, 152-4-5, 118-7-15, 118-7-11 and 118-7-4. These statutes may be raised as affirmative defenses in an answer, but they cannot properly be considered in the present posture of this case. The same rule applies to the other points raised in the motion to dismiss; *i.e.*, that "the petition is sham and frivolous," that "this matter is now res adjudicata" and "laches."

■■ It is axiomatic that in ruling upon a motion to dismiss, all material allegations of the complaint are "conclusively presumed to be true." *Cook v. Denver,* 128 Colo. 578, 265 P.2d 700. It thus becomes a question

of law as to what legal rights or obligations result from the "facts" alleged in the complaint of Kate. Therefore, the sole question for determination on this writ of error is: Does the petition state facts sufficient to constitute a claim?

In 1954, when the challenged proceedings occurred, the statutes relating to the determination of heirship appeared in Article 4, Chapter 152, C.R.S. '53. C.R.S. '53, 152-4-1, *inter alia*, provides that the "* * * petition shall show as particularly as known or can by due diligence be ascertained * * * the names, addresses and relationship to the decedent of all the heirs entitled to any interest in such property * * *."

Jose and Ramos were alleged to be the only heirs of decedent in the 1954 petition. In the 1963 petition it is alleged, and we must conclusively presume the truth thereof, that Kate was Isaac's wife, and that Rose, Mabel and Maria, in addition to Jose and Ramos, were children of Isaac, and that Jose, the 1954 petitioner, well knew this to be the fact; but, in spite of this knowledge, and with the intent to defraud Kate, Rose, Mabel and Maria, Jose listed only himself and Ramos. It is further alleged that none of the petitioners knew about the 1954 heirship proceedings until advised by Jose in May 1963.

Thus it is clear, on the face of the petition to set aside the 1954 decree, that Jose did not "show as particularly as known * * * the names, addresses and relationship to the decedent of all the heirs entitled to any interest" in the property.

C.R.S. '53, 152-4-2 provides for the giving of notice to all interested persons by publication, including the form of the notice. This section also requires "The clerk of the court * * * [to] mail a copy of the notice to each heir whose address is shown in the petition at least thirty days prior to entry of decree * * *. A copy of such notice shall be *personally served on all persons residing in this state who are named in said petition as heirs of the decedent* and whose addresses are shown in the petition."

 The statute (152-4-2) imposes a duty on a petitioner to "show as particularly as known" the names of *all heirs* entitled to an interest. It further provides for notice by publication and that notice *"be personally served upon all persons residing in the state"* who are named in the petition. The petition of Kate, in effect, alleges fraud by concealment, in that, although Jose knew that Kate, Rose, Mabel and Maria were heirs, he failed to disclose that fact in his petition, thus depriving them of personal service of the notice.

 We are in accord with the law on this point, as set forth in *Newell Bros. v. Hanson*, 97 Vt. 297, 304, 123 A. 208, 210:

"* * * fraud may be committed by the suppression of truth as well as by the suggestion of falsehood. *The test of liability for failure to disclose facts material to the transaction is some duty, legal or equitable, arising from the relation of the parties, such as that of trust or confidence, or superior knowledge or means of knowledge.* When in the circumstances of the particular case such duty is present, failure to disclose a material fact with intention to mislead or defraud is equivalent to a fraudulent concealment of the fact, and stands no better than the affirmation of a material misrepresentation." (Emphasis added.)

 A party is entitled to relief from an adverse decree on the ground of fraud where it appears that he could have asserted a valid claim in the proceedings in which the decree was entered had he received the required notice. In order to set aside the decree on the ground of fraud, it must appear that the prevailing party in the suit in which the decree was rendered contrived by fraud to keep the complainant and the court in ignorance of the true facts, whereby a wrong conclusion was reached and a positive injury was done to the party complaining, without neglect or inattention on his part. *Venner v. Denver Union Water Co.*, 40 Colo. 212, 90

P.623; *Ward v. Durham*, 134 Ill. 195, 25 N.E. 745; *Mc-Dowell v. Morrell*, 73 Tenn. (5 Lea) 278.

The constituents of fraud, in the context here employed, are (1) a false representation of a material existing fact (that Jose and Ramos were the only heirs of Isaac), or a concealment of a material existing fact, that in equity and good conscience should be disclosed (that Kate, Rose, Mabel and Maria were also heirs at law); (2) knowledge on the part of the one making the representation that it is false (which was alleged); (3) ignorance on the part of the one from whom the fact is concealed (alleged by Kate, Rose, Mabel and Maria to be a fact); (4) that the representation or concealment was made or practiced with the intention that it be acted upon (which it was by the entry of the decree); and (5) resulting in damage. *Morrison, Administratrix v. Goodspeed*, 100 Colo. 470, 68 P.2d 458; *Newell Bros. v. Hanson*, 97 Vt. 297, 123 A. 208.

The judgment of the county court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE DAY and MR. JUSTICE PRINGLE concur.