Malcolm GLAD, Plaintiff and
Appellant,

v.

GUNDERSON, FARRAR, ALDRICH
AND DeMERSSEMAN, f/k/a Gunder-
son, Farrar, Aldrich, Warder and DeM-
ersseman; Ellen K. Farrar, As Execu-
trix of the Estate of John C. Farrar;
Robert W. Gunderson; Ray J. Aldrich;
Robert A. Warder; Michael B. DeM-
ersseman; Curtis S. Jensen; Wayne F.
Gilbert; and Doyle D. Estes, Defend-
ants and Appellees.

No. 14941.

Supreme Court of South Dakota.

Argued Oct. 21, 1985.

Decided Dec. 18, 1985.

Robert Van Norman, Rapid City, for
plaintiff and appellant.

Ronald Clabaugh, of Bangs, McCullen,
Butler, Foye & Simmons, Rapid City, for
defendants and appellees.

HENDERSON, Justice.

### ACTION

This is a civil appeal arising from an
order granting summary judgment in a le-
gal malpractice case. We affirm.

### FACTS

On March 21, 1978, Malcolm Glad (Glad)
appellant-plaintiff, formed a limited part-
nership with John Thompson (Thompson)
and Kenneth Olson (Olson). This limited
partnership was known as Exterior Design-
ers and Glad was a limited partner therein.

The partnership agreement was drawn by Attorney John C. Farrar (Farrar), and properly filed with the Pennington County Register of Deeds. At the time, Farrar was a general partner in the law firm of Gunderson, Farrar, Aldrich, Warder and DeMersseman, which is now known as Gunderson, Farrar, Aldrich and DeMersseman (the law firm). Farrar died on February 9, 1983.

On October 16, 1978, Glad, Thompson, and Olson entered into an amended partnership agreement whereby Thompson was removed from the partnership and Glad was made a general partner with Olson. This amended partnership agreement was also drawn by Farrar and it was backdated so that its term would begin on March 21, 1978, and thus correspond with the term of the original limited partnership. Prior to Glad's execution thereof, however, Farrar informed Glad that the amended partnership agreement would not subject him to personal liability for partnership debts incurred prior to its execution. This amended partnership agreement was not filed with the register of deeds. Between March 21 and October 16, 1978, Exterior Designers accumulated debts of $16,307.87 owing to Diamond International Corporation (Diamond), formerly known as Foster Lumber Company, Inc. During this same period of time, Glad did not play an active role in partnership management decisions.

On May 15, 1979, Diamond obtained a default judgment against Glad and Olson for $16,307.87. On October 5, 1979, Glad was served at his residence in Minnesota with a Notice of Judgment. Glad informed Farrar to take care of the judgment as he, Glad, was a silent partner at the time the debt was incurred and should not be liable. Farrar moved to set aside the default judgment but the trial court denied the motion. Farrar then informed Glad that an appeal should be taken and that Minnesota counsel may be necessary to restrain the issuance of an execution in that state. Thereafter, and throughout the continuation of all proceedings herein, copies of all relevant documents, briefs, etc., were sent to, and continual contact maintained with, Glad and his Minnesota counsel so as to fully advise them of all developments. This Court, in *Foster Lumber Co., Inc. v. Glad*, 303 N.W.2d 815 (S.D.1981), reversed the default judgment against Glad because Glad had not been personally served with process.

On July 14, 1981, Glad was personally served by Diamond in a second lawsuit on the partnership debt. In April 1982, the trial court awarded Diamond summary judgment on the debt. Thereafter, Wayne F. Gilbert (Gilbert), an attorney with the Gunderson law firm, wrote Glad and his Minnesota counsel that the trial court's decision centered "completely on the Ocober [sic] 16, 1978 Amended Articles of Partnership of Exterior Designers" and that "the issue of whether the Amended Articles of Partnership can relate back is the primary issue on appeal." This Court, in *Diamond Int'l Corp. v. Glad*, 330 N.W.2d 526 (S.D. 1983), affirmed Diamond's summary judgment award and held that the amended partnership agreement of October 16, 1978, which was backdated to March 21, 1978, made Glad liable for debts incurred after March 21, 1978.

Six years later, on October 16, 1984, Glad initiated the present legal malpractice action against the Gunderson law firm, the individual members thereof, and Ellen K. Farrar as Executrix of the Estate of John C. Farrar. Glad's complaint asserts, inter alia, that he entered the amended partnership agreement on the advice of Farrar; that he was not advised that becoming a general partner and backdating the agreement would subject him to personal liability for prior partnership debts; that Farrar did advise him that becoming a general partner and backdating the agreement would not make him liable for such debts; that because of the law firm's negligence, he has suffered certain damages; that the statute of limitations on a malpractice action had expired on October 16, 1981; that the law firm, by their silence in a trust relationship, fraudulently concealed the malpractice action; and that the law firm's fraudulent

conduct tolls the running of the statute of limitations.

An answer was filed and on January 23, 1985, a hearing was held on a motion for summary judgment. By an order dated February 12, 1985, the trial court granted summary judgment in favor of the law firm, its members, and Executrix Farrar. The trial court's rationale was that the action was commenced more than three years after the alleged occurrence; that Glad had the burden to establish that the statute of limitations had been tolled; that there is no evidence of active or passive concealment by the law firm of any material fact; that there was no silence on the part of the law firm; that attorneys or other professionals do not have an obligation to express opinions to their clients or patients that they have or may have been negligent in the handling of a matter; and that accordingly, Glad's claim was barred by the statute of limitations.

From this order, Glad now appeals.

## ISSUE

WE ARE CONCERNED WITH THE LEGAL ISSUE AS TO WHETHER MATERIAL ISSUES OF FACT CONCERNING FRAUDULENT CONCEALMENT WERE DEVELOPED WHICH WOULD TOLL THE STATUTE OF LIMITATIONS. DETERMINING THERE WAS NOT, WE AFFIRM THE TRIAL COURT.

## DECISION

■ Legal malpractice actions are governed by the statute of limitations embodied in SDCL 15–2–14.2. This statute provides, inter alia: "An action against a licensed attorney, his agent or employee, for malpractice, error, mistake or omission, whether based upon contract or tort, can be commenced only within three years after the alleged malpractice, error, mistake or omission shall have occurred." This statute of limitations, however, will be tolled until the cause of action is discovered or might have been discovered, if there is fraudulent concealment of the cause of ac-

tion. *Holy Cross Parish v. Huether,* 308 N.W.2d 575, 577 (S.D.1981); *Hinkle v. Hargens,* 76 S.D. 520, 524–25, 81 N.W.2d 888, 890–91 (1957). Thus, in summary judgment proceedings where the defendant asserts the statute of limitations as a bar to the action, and presumptively establishes the defense by showing the case was instituted beyond the statutory period, the burden then shifts to the plaintiff to establish the existence of material facts in avoidance of the statute of limitations, e.g., fraudulent concealment of the cause of action. *See McMahan v. Snap On Tool Corp.,* 478 N.E.2d 116, 120 (Ind.App.1985), and *Conard v. Waugh,* 474 N.E.2d 130, 134 (Ind. App.1985).

In the present case, Glad's complaint conceded that his cause of action occurred on October 16, 1978, and that the statute of limitations had expired. In avoidance of the statute's bar, however, Glad's complaint asserted that the law firm's and Farrar's silence concerning a possible legal malpractice action against them constituted fraudulent concealment of the legal malpractice action.

■ In *Hinkle,* 76 S.D. at 525, 81 N.W.2d at 891, while recognizing fraudulent concealment of a cause of action as an implied exception to the statute of limitations, this Court stated:

In the absence of some trust or confidential relationship between the parties there must be some affirmative act or conduct on the part of the defendant designed to prevent, and which does prevent, the discovery of the cause of action. Mere silence, in the absence of a duty to speak, is not ordinarily sufficient. Where, however, a trust or other confidential relationship does exist between the parties, silence on the part of one having the duty to disclose, constitutes fraudulent concealment in the absence of any affirmative act.

*See also, Holy Cross Parish v. Huether,* 308 N.W.2d at 577. Thus, in South Dakota, if a trust or confidential relationship exists between the parties, which imposes a duty

to disclose, mere silence, by the one under that duty, constitutes fraudulent concealment and thus tolls the applicable statute of limitations. The silence, however, must concern defects which the party with the duty to disclose *knew or should have known. Holy Cross Parish, id.*

■ Here, the law firm's defense of Glad, up to the April 1982 adverse trial court decision, was bottomed upon Glad not being liable for these partnership debts because when they were incurred, he, Glad, was a limited partner who did not exercise an impermissible degree of control over the partnership business. The April 1982 adverse trial court decision, however, determined that the backdating of the second partnership agreement subjected Glad to liability. In affirming that decision, this Court, in *Diamond Int'l Corp.*, 330 N.W.2d 526, recognized the limited amount of case law in this area and relied on the Arizona Court of Appeals' analysis in *Lowe v. Arizona Power & Light Co.*, 5 Ariz.App. 385, 427 P.2d 366 (1967), thereby upholding the decision that the backdating of the partnership agreement made Glad liable. Under these facts and circumstances, we cannot hold that the law firm's failure to inform of the backdating defect constituted silence of a known defect, which in turn constituted fraudulent concealment of a cause of action.

Glad and his Minnesota counsel were kept abreast of all developments and proceedings. Glad personally knew the circumstances surrounding the execution and content of the October 16, 1978, amended partnership agreement. Persons with knowledge of the basic operative facts cannot claim concealment. *Schnebly v. Baker*, 217 N.W.2d 708, 723 (Iowa 1974). Glad knew, for a substantial period of time before the statute of limitations had run, that he had suffered a financial loss which he now seeks to recoup from appellees. We find no evidence in this record establishing that the appellees either withheld or concealed facts from Glad. In point of fact, the law firm provided Glad with each court decision as it was rendered and all relevant correspondence received from opposing counsel. Extensive correspondence, by way of exhibits, reflects that the law firm repeatedly kept Glad aware of his legal situation in the South Dakota courts. Decedent, John Farrar, recommended to Glad that he obtain separate counsel and this recommendation was made by decedent, John Farrar, long before the running of the statute of limitations. The law firm asserted a seemingly valid defense, i.e., limited partner—no control, but the trial court found the backdating fatal. This Court affirmed with an opinion which recognized the paucity of case law on this legal problem, and cited the analysis of a single state court of appeals decision. These circumstances, in retrospect, do not lead to the conclusion that the law firm was silent about a malpractice cause of action or that it knew or should have known that the backdating was fatal and constituted a cause of action for malpractice. Accordingly, the cause of action for legal malpractice is barred by the statute of limitations, there is no fraudulent concealment nor material issues of fact; therefore, the trial court is affirmed.

FOSHEIM, C.J., MORGAN, J., and WUEST and HERTZ, Circuit Judges, Acting as Supreme Court Justices, concur.