Margaret J. CONWAY, Plaintiff
and Appellant,

v.

Gerald J. CONWAY, Defendant
and Appellee.

No. 17639.

Supreme Court of South Dakota.

Submitted on Briefs Feb. 11, 1992.

Decided June 17, 1992.

Michael A. Hauck of Davenport, Evans, Hurwitz and Smith, Sioux Falls, for plaintiff and appellant.

John M. Wilka of Christenson and Wilka, Sioux Falls, for defendant and appellee.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

Margaret Conway (Margaret) brought this action for an equitable accounting of rental income received from jointly-owned real property located in Minnehaha County. Trial court granted a partial summary judgment to Gerald Conway (Gerald).

Margaret appeals and raises the following issues on appeal:

(1) Does the applicable statute of limitations and/or doctrine of laches bar Margaret's action? We hold the statute of limitations is tolled because of fraudulent concealment.

(2) Did the trial court err in denying Margaret's motion for summary judgment?

Due to our determination on Issue 1, we do not reach Issue 2. We reverse due to our holding on Issue 1.

### FACTS

The parties' father died intestate in 1951. At that time he owned 160 acres of farmland in Minnehaha County, South Dakota. In 1959, the Final Decree of the father's estate was entered in county court in Minnehaha County. The decree contained the following provision relating to Loretta Conway's (Mother), homestead:

> To the said Loretta Conway, surviving widow, an individual three-ninths (3/9ths) thereof;
> To the said Margaret Jane Conway, daughter, an individual two-ninths (2/9ths) thereof;
> To the said Glen D. Conway, son, an individual two-ninths (2/9ths) thereof; and
> To the said Gerald J. Conway, son, an individual two-ninths (2/9ths) thereof.
> To have and to hold the same to them and their heirs forever and in fee simple, but subject to the right of said Loretta Conway, as surviving widow, to the use, possession and occupancy of said real property as long as she may live, in accordance with the provisions of law

pertaining to homestead property, and the Court hereby expressly reserves jurisdiction of the real property hereinbefore specifically described for the purpose of entering a supplementary decree declaring the right to possess and occupy the whole homestead by the said surviving widow of said decedent, herein and hereby so reserved and assigned, has been terminated by the death of said surviving widow.

In 1954, Mother moved off the family farm and into Sioux Falls. From this year until the time of her death, Mother lived in Gerald's house, albeit in a separate apartment therein. From 1954 until 1981, Mother collected rental income in her own name which the subject farm generated. In addition to Supplemental Social Security Income payments and a VA pension, this rental income was Mother's primary source of income.

On January 12, 1981, Mother conveyed her interest in the farm land to her son, Gerald, by means of a warranty deed. This warranty deed was recorded with the Minnehaha County Register of Deeds on January 13, 1981. The primary purpose of this conveyance was to eliminate Mother's main income source so that she would qualify for greater social security benefits.

Subsequent to this conveyance, Gerald leased the farm to third parties in his own name, collected the rents and deposited them in his personal bank account. From 1981 until Mother's death in 1989, Gerald received the payments from the farm. It is undisputed that the rental payments were made payable to Gerald, and that Gerald declared the rent on his income tax filing. He alleges that he used the rental income to provide for Mother. Gerald never notified Margaret of the fact that Mother had conveyed her interest in the farm to him nor that he thereafter proceeded to collect the rental income as his own. Margaret became aware of the 1981 conveyance of Mother's interest to Gerald in May, 1983, but did not become aware of the change regarding the rental income.

In 1984, Gerald purchased Patrick's (f/k/a Glen) 2/9ths interest in the farm for

$25,000. This warranty deed was recorded in the Minnehaha County Register's office. Gerald offered on several occasions from 1984 to 1988, to purchase Margaret's ⅔ths interest in the farm. These offers were declined. No other matters concerning the farm were revealed or discussed by Gerald.

On May 15, 1989, Mother died leaving a small estate. Because of the small size of the estate and the existence of a second executed will revoking the first, Margaret investigated. She became aware, for the first time, that Gerald had been collecting the farm rent payments. She then demanded payment of her share of all rentals collected since 1981. Gerald refused. However, Gerald alleges that Margaret demanded payment or an accounting at various times from 1983 to the commencement of the action.

On August 21, 1990, Margaret brought the instant action, seeking payment of back rents allegedly owing from Gerald to Margaret.

## DECISION

I. *Did the trial court err when it granted partial summary judgment to Gerald based on expiration of the applicable statute of limitations and on the doctrine of laches?* We hold that the trial court did err.

A. Statute of Limitations

■ Trial court ruled that Margaret failed to bring suit on her cause of action within the six year limitations period embodied in SDCL 15–2–13. This statute provides, inter alia:

... the following civil action ... can be commenced only within six years after the cause of action shall have accrued:

(1) an action upon a contract obligation, or liability, express or implied ...

However, this statute of limitations will be tolled until the cause of action is discovered or might have been discovered, if there is fraudulent concealment of the cause of action. *Glad v. Gunderson, Farrar, Aldrich,* 378 N.W.2d 680, 682 (S.D.1985); *Accord, Holy Cross Parish v. Huether,* 308 N.W.2d 575, 577 (S.D.1981); *Hinkle v. Har-*

*gens,* 76 S.D. 520, 524–25, 81 N.W.2d 888, 890–91 (1957). In summary judgment proceedings, where the defendant asserts the statute of limitations as a bar to the action, and presumptively establishes the defense by showing the case was instituted beyond the statutory period, the burden then shifts to the plaintiff to establish the existence of material facts in avoidance of the statute of limitations, e.g., fraudulent concealment of the course of action. *Kurylas, Inc. v. Bradsky,* 452 N.W.2d 111, 117 (S.D.1990); *Glad,* 378 N.W.2d at 682; *see, McMahan v. Snap On Tool Corp.,* 478 N.E.2d 116, 120 (Ind.App.1985); *Connard v. Waugh,* 474 N.E.2d 130, 134 (Ind.App.1985).

■ In the present case, the trial court ruled that Margaret's discovery of the execution of the warranty deed by Mother commenced the running of the six year statute of limitations embodied in SDCL 15–2–13. However, Margaret asserts that Gerald's failure to make any disclosure concerning the rent payments constituted fraudulent concealment of the cause of action and forecloses the statute's bar.

■ This Court has long recognized fraudulent concealment of a cause of action as an implied exception to the statute of limitations. *Glad,* 378 N.W.2d at 682; *Holy Cross Parish,* 308 N.W.2d at 577; *Hinkle v. Hargens,* 76 S.D. 520, 525, 81 N.W.2d 888, 891 (1957). In *Hinkle* we stated:

In the absence of some trust or confidential relationship between the parties there must be some affirmative act or conduct on the part of the defendant designed to prevent, and which does prevent, the discovery of the cause of action. Mere silence, in the absence of a duty to speak, is not ordinarily sufficient. *Where, however, a trust or other confidential relationship does exist between the parties, silence on the part of one having the duty to disclose, constitutes fraudulent concealment in the absence of any affirmative act.* (Emphasis added).

*Hinkle,* 76 S.D. at 525, 81 N.W.2d at 891; *Glad,* 378 N.W.2d at 682; *see also, Holy*

*Cross Parish,* 308 N.W.2d at 577. In South Dakota, if a trust or confidential relationship exists between the parties, which imposes a duty to disclose, mere silence by the one under that duty constitutes fraudulent concealment. *Glad,* 378 N.W.2d at 682, 683. The applicable statute of limitations is then tolled. *Id.* at 683. The silence must concern defects which the party with the duty to disclose knew or should have known. *Holy Cross Parish,* 308 N.W.2d at 577.

■ Initially, we must resolve if the nature of the relationship between the parties mandates disclosure. We hold, in this instance, that it does. Essentially, Gerald and Margaret are tenants in common. In a relationship of this sort, a confidential relationship does exist between the parties.

Although strictly speaking a fiduciary relationship does not exist between tenants in common by reason of the mere fact that they are such, *a relationship of trust and confidence exists* to the extent that each co-tenant has a duty to sustain or at least not to assail, the common interest or title, *and one co-tenant will not be permitted to obtain a secret profit to the disadvantage of the other co-tenants where all must act in unison.* (Emphasis added).

86 C.J.S. Tenancy in Common § 17 (1954); *see also, Hafeman v. Gem Oil Co.,* 163 Neb. 438, 80 N.W.2d 139 (1956) (if one co-tenant has possession of funds belonging to his co-tenant he becomes trustee thereof and stands in a fiduciary relationship to the extent of the interest of the co-tenant who may compel an accounting). Therefore, a confidential relationship existed between Margaret and Gerald and Gerald had a duty to disclose that he was receiving all rental income from the farm.

It is clear from the record that Gerald made a conscious decision to remain silent about the receipt of rental income in order to conceal this fact from Margaret. The family had long operated under the belief that all rental income from the farm was to go to the support of Mother until her death. Gerald stated that he made no attempt whatsoever to inform Margaret of

the change in circumstances. He additionally stated that it was *her responsibility to inquire* as to the application of the rental income. Although he had opportunity to inform her when he occasionally offered to buy her ⅔ths interest, he did not do so. Moreover, Margaret lived several states away from South Dakota and had no ready access to information concerning the farm. Again, she reasonably operated under the assumption that, like the past 27 years, all rental income would go to Mother for her support.

Trial court held that discovery in 1983 of the warranty deed put upon Margaret the duty of further inquiry and notice. We do not agree. We cannot make the inductive leap binding Margaret with knowledge of Gerald's claim to all rental income, based on her discovery of the warranty deed's existence.

Since Gerald had a duty to disclose he was receiving all rental income from the farm, but chose to remain silent, we hold that this constitutes fraudulent concealment. The parties were involved in a confidential relationship. Gerald should not profit from his own wrong. Thus, the applicable statute of limitations was tolled by his fraudulent concealment.

### B. Doctrine of Laches

■ Trial court additionally ruled that Gerald was entitled to partial summary judgment because the doctrine of laches bars Margaret's claim. We do not agree.

■ To support a determination that laches bars Margaret's action it must be found that, (1) she had full knowledge of the facts upon which the action is based, (2) regardless of this knowledge, she engaged in an unreasonable delay before commencing the suit, *and* (3) that allowing her to maintain the action would prejudice other parties. *Golden v. Oahe Enterprises, Inc.,* 90 S.D. 263, 279, 240 N.W.2d 102, 110 (1976); *Federal Home Loan Bank Bd. v. Elliott,* 386 F.2d 42 (9th Cir.1967) (citing 13 Fletcher Cyclopedia Corporations (Perm. Ed.) § 5874, p. 279); *cert. denied, Elliott v. Federal Home Loan Bank Bd.,* 390 U.S. 1011, 88 S.Ct. 1260, 20 L.Ed.2d 161 (1968).

Laches does not depend upon passage of time alone; plaintiff must be chargeable with lack of diligence in failing to proceed more promptly. *Golden*, 90 S.D. at 277–78, 240 N.W.2d at 110. In a case where at least part of the delay is attributable to defendant, or when defendant has engaged in concealment, misleading tactics and misrepresentation, laches is not available as a defense. *Golden*, 90 S.D. at 278, 240 N.W.2d at 110.

We hold that Gerald has not produced evidence sufficient to establish the requirements necessary to advance a defense of laches. As we discussed in the foregoing paragraphs, Margaret did not have full knowledge of the facts upon which the action is based until 1989. Further, since she did not have full knowledge of the facts upon which the action is based, she cannot be said to have engaged in unreasonable delay in commencing this suit. Additionally, Gerald will not be prejudiced by providing Margaret her fair share of rental income while keeping that share which rightfully belongs to him. Lastly, as we said in *Golden*, laches is not available as a defense when, "... defendant has engaged in concealment, misleading tactics and misrepresentation." *Golden*, 90 S.D. at 288, 240 N.W.2d at 110.

Accordingly, we reverse and remand for an equitable accounting of all rental income received. We charge trial court to determine the applicable date from which rental income started to accrue in favor of Margaret, and, thenceforward, the amount of rental income due Margaret Conway.

MILLER, C.J., and WUEST, SABERS and AMUNDSON, JJ., concur.