#29367-aff in pt & rev in pt-PJD
**2021 S.D. 58**

\* \* \* \*

CLIFFORD WILLIAM OLSON,                           Plaintiff and Appellant,

    v.

MELISSA J. BERGGREN,
EDWARD J. BICKEL and
CHRISTINA MOLD,                           Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
CORSON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MICHELLE K. COMER
Judge

\* \* \* \*

SCOTT N. HEIDEPRIEM
MATTHEW A. TYSDAL
PETE HEIDEPRIEM of
Heidepriem, Purtell, Siegel
   & Hinrichs, LLP
Sioux Falls, South Dakota

ROBERT M. RONAYNE
REBECCA L. RONAYNE of
Ronayne Law Office, P.C.
Aberdeen, South Dakota                           Attorneys for plaintiff and
                                            appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
JANUARY 11, 2021
OPINION FILED **09/29/21**

JUSTIN L. BELL of
May, Adam, Gerdes
    & Thompson, LLP
Pierre, South Dakota

FRANCIS J. RONDONI
ELIZABETH C. HENRY of
Chestnut Cambronne, P.A.
Minneapolis, Minnesota

Attorneys for defendants and appellees, Melissa J. Berggren and Christina Mold.


JACK H. HIEB
ZACHARY W. PETERSON of
Richardson, Wyly, Wise, Sauck
    & Hieb, LLP
Aberdeen, South Dakota

Attorneys for defendant and appellee, Edward J. Bickel.

#29367

DEVANEY, Justice

[¶1.] Clifford Olson did not have a relationship with his father, Edward P. Bickel, and had never met any of his siblings while Edward was alive. After Edward passed away in 2014, his estate was distributed intestate to Melissa Berggren, Christina Mold (Tina), and Edward J. Bickel (Eddie). After learning of Edward's death, Clifford brought suit against Melissa, Tina, and Eddie, alleging improper distribution, fraud, unjust enrichment, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. Melissa, Tina, and Eddie filed motions for summary judgment on all claims, asserting, among other things, that Clifford's claims were untimely and also failed as a matter of law because Clifford presented no evidence that they knew at the time of Edward's death that Clifford was a possible heir. The circuit court granted summary judgment dismissing Clifford's claims. Clifford appeals. We affirm in part, reverse in part, and remand.

**Factual and Procedural Background**

[¶2.] Edward P. Bickel died intestate on February 13, 2014, with an estate worth approximately $2 million. Edward had three children born from two different marriages—Eddie from his first marriage, and Melissa and Tina from his second marriage.[1] Although Melissa, Tina, and Eddie were siblings, they were not close with each other or with Edward. Tina only lived with Edward in Minnesota during the time when her parents were married and while she was an infant. Melissa likewise lived with Edward in Minnesota during her infant years, but she also lived

---

1. Although the case filing lists as defendant "Christine M. Mold," her name is actually "Christina M. Mold" and Melissa Berggren is now known as "Melissa J. Voronyak."

-1-

with him in Firesteel, South Dakota, for one year when she was twelve years old. Eddie lived with Edward in South Dakota while his parents were married. After his parents divorced when Eddie was approximately three years old, he lived with Edward during the summers, including during the year that Melissa stayed with Edward. Eddie also lived with Edward for approximately two years around the time he was in eighth and ninth grade. However, after an incident between Edward and Eddie, Edward pled guilty to felony child abuse and lost custody of Eddie. According to Melissa, after the children became adults, she and Eddie did not maintain a relationship with Edward due to his alcoholism, but Tina "has a soft heart" and maintained a relationship with Edward. Tina explained that although Melissa and Eddie "had their issues" with Edward, she "loved him[.]"

[¶3.] In addition to his children born in wedlock, Edward was suspected to have additional children born out of wedlock, two sons in particular. In early 2010, Tyler Ebel reached out via social media to Melissa, Tina, and Eddie after reading the obituary for Edward's father (their grandfather). The obituary listed Melissa, Tina, and Eddie as Edward's children. Tyler had been told by his mother when he was five years old that Edward was his father, and Tyler had met Edward when he was a child; however, he did not see him at any time after turning seven years old. Tyler did not have an interest in talking to or establishing a relationship with Edward; he only wished to connect with his siblings. For the next two years, Tyler communicated regularly with Melissa, Tina, and Eddie. He also met Eddie in person at a restaurant in Mobridge, South Dakota. However, after Edward's death in 2014, Melissa, Tina, and Eddie stopped all communications with Tyler.

[¶4.] Edward's obituary was published in the Aberdeen American News on February 18, 2014. Shortly thereafter, Melissa, Tina, and Eddie met with an attorney regarding the probate of the estate. The three of them agreed that Melissa would be appointed personal representative of the estate. On February 21, 2014, Melissa filed an application for informal appointment as personal representative. In addition to herself, Melissa identified Eddie and Tina as Edward's heirs. Eddie and Tina executed a renunciation of right to appointment as personal representative the same day and in that document represented that they and Melissa were Edward's only heirs. Melissa, Tina, and Eddie also executed a document waiving bond and, in such document, represented that they were "all of the heirs of" Edward. Melissa was appointed personal representative, and the notice of informal appointment of personal representative was mailed to Melissa, Eddie, and Tina.

[¶5.] The majority of Edward's estate consisted of land. The land was conveyed to Eddie, and he paid Melissa and Tina for their shares. In late 2016, Melissa, Tina, and Eddie filed a waiver of accounting and consent to distribution. In January 2017, the remaining asset in the estate—some residual cash—was distributed to Melissa, Eddie, and Tina.

[¶6.] In 2018, Clifford Olson googled Edward's name and found his 2014 obituary. He thereafter made contact with Eddie through Eddie's wife's Facebook page. Clifford sent Eddie a message explaining that he was Edward's son and indicating that he was interested in talking to Edward's family. Eddie and Clifford exchanged communications multiple times and eventually met at a restaurant in

Mobridge. Their meeting lasted approximately five hours, and they discussed their lives and families. According to Clifford, Eddie never suggested Clifford was not Edward's son. After their in-person meeting, Eddie and Clifford continued to communicate.

[¶7.] Clifford also exchanged messages with Tina. In one early communication, Tina wrote to Clifford that "Dad talked about there being another boy of his a couple times, one in Aberdeen. And that sure seems like you so he probably said that to Eddie also." Clifford expressed interest in hearing stories about Edward, and Tina shared information about her father's likes, hobbies, and personality.

[¶8.] In August 2018, Clifford reached out via Facebook to Edward's sister, Gail Bickel. Gail told Clifford that she recognized his name. Gail had also been in communication with Tyler. Gail told Tyler about Clifford and sent both of them information related to the probate of Edward's estate.[2]

[¶9.] In February 2019, Tyler and Clifford brought suit against Melissa (individually and as personal representative of Edward's estate), Tina, and Eddie for: (1) improper distribution, (2) fraud, (3) breach of fiduciary duty (Melissa), and (4) unjust enrichment. Thereafter, the parties learned through DNA testing that Edward was not Tyler's father, and Tyler's claims were dismissed. Clifford then filed an amended complaint alleging the same claims set forth in the initial

---

2. According to Clifford, Gail encouraged him and Tyler to bring suit against Melissa, Tina, and Eddie and likely did so to get back at Eddie and other family members for a lawsuit Gail lost to Eddie related to the probate of Edward and Gail's father's (Eddie's grandfather's) estate. *See In re Estate of Bickel,* 2016 S.D. 28, 879 N.W.2d 741.

complaint, but he added an additional claim against Tina and Eddie for aiding and abetting Melissa's breach of fiduciary duty.

[¶10.] Melissa and Tina, represented by the same counsel, and Eddie, represented by separate counsel, filed separate motions for summary judgment on all claims asserted by Clifford. All three siblings asserted that Clifford's claims related to the distribution of the estate were barred under SDCL 29A-3-1006 because Clifford failed to bring suit within three years of Edward's death or within one year of the distribution of the estate property. In response, Clifford noted that SDCL 29A-3-1006 does not apply when fraud is alleged; therefore, in his view, his claims related to the distribution of the estate were timely under SDCL 29A-1-106. Melissa, Tina, and Eddie argued that summary judgment was nevertheless appropriate because Clifford failed to identify any evidence to support his fraud allegation, namely that Melissa, Tina, and Eddie knew, at the time of Edward's death or during the probate, that Clifford was Edward's child. Melissa further argued that summary judgment was proper on the breach of fiduciary duty claim because she did not know Clifford existed and thus did not owe him a duty.

[¶11.] After hearing arguments by counsel and considering deposition testimony and supporting affidavits, the circuit court took the matter under advisement and thereafter issued an order granting Melissa, Tina, and Eddie summary judgment and dismissing all of Clifford's claims.[3] Clifford appeals,

---

3. The court did not issue a written memorandum or enter an oral decision explaining its reason for granting summary judgment. However, the absence of an explanation does not affect our ability to examine the issues on appeal because we review a summary judgment ruling de novo. *See Huston v.*

(continued . . .)

arguing that the circuit court erred in granting summary judgment. He asserts that he timely commenced the fraud-based claims, as well as the claims for breach of fiduciary duty and aiding and abetting, under the applicable limitation periods. He further argues that genuine issues of material fact exist, precluding summary judgment on each of his claims against Melissa, Tina, and Eddie.

## Standard of Review

[¶12.]    On review of a decision granting summary judgment, "we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Hanna v. Landsman*, 2020 S.D. 33, ¶ 21, 945 N.W.2d 534, 541 (quoting *Millard v. City of Sioux Falls*, 1999 S.D. 18, ¶ 8, 589 N.W.2d 217, 218).

## Analysis and Decision

### 1. Whether Clifford's claims were timely commenced.

#### a. Improper distribution, fraud, and unjust enrichment

[¶13.]    We first analyze Clifford's claims of improper distribution, fraud, and unjust enrichment because they are all based upon the same alleged conduct—the siblings' perpetration of fraud in connection with Edward's probate proceeding.[4]

---

(. . . continued)

*Martin*, 2018 S.D. 73, ¶ 10, 919 N.W.2d 356, 361 (reviewing de novo whether summary judgment was proper even though the circuit court did not indicate the basis of its decision).

4.    Clifford asserts that because his unjust enrichment claim parallels his fraud claim, the unjust enrichment cause of action is subject to the same time limitation as his fraud claim under SDCL 29A-1-106. *See Healy v. Osborne*, 2019 S.D. 56, ¶ 21, 934 N.W.2d 557, 563 (applying the same limitation period to the related fraud and unjust enrichment claims).

Clifford concedes that to recover property improperly distributed or to recover its value from any distributee, one is generally required under SDCL 29A-3-1006 to bring the claim within three years of the decedent's death or within one year after distribution. That statute provides:

> Unless previously adjudicated in a formal testacy proceeding or in a proceeding settling the accounts of a personal representative or otherwise barred, the claim of a claimant to recover from a distributee who is liable to pay the claim, and the right of an heir or devisee, or of a successor personal representative acting in their behalf, to recover property improperly distributed or its value from any distributee is forever barred (i) if a claim by a creditor of the decedent, three years after the decedent's death, and (ii) any other claimant and any heir or devisee, at the later of three years after the decedent's death or one year after the time of its distribution. *This section does not bar an action to recover property or value received as a result of fraud.*

*Id.* (emphasis added). However, relying on the emphasized language of the statute, Clifford contends that SDCL 29A-3-1006 does not control because Melissa, Tina, and Eddie perpetrated fraud in the probate proceeding. Rather, in his view, SDCL 29A-1-106 governs his fraud-based claims. SDCL 29A-1-106 provides in relevant part:

> If fraud has been perpetrated in connection with any proceeding or in any statement filed under this code or if fraud is used to avoid or circumvent the provisions or purposes of this code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not. *Any proceeding must be commenced within two years after the discovery of the fraud, but no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of commission of the fraud.*

(Emphasis added.)

[¶14.]    We have not before examined whether the phrase "discovery of the fraud" in SDCL 29A-1-106 includes both actual and constructive notice of the fraud. Under SDCL 15-2-3, which governs fraud claims in general, a cause of action based on fraud is "deemed to have accrued" when "the aggrieved party discovers, or *has actual or constructive notice of, the facts constituting the fraud.*" (Emphasis added.) We have referred to this as the "fraud discovery rule" and have explained that "[s]tatutes of limitations begin to run when plaintiffs first become aware of facts prompting a reasonably prudent person to seek information about the problem and its cause." *Strassburg v. Citizens State Bank*, 1998 S.D. 72, ¶ 13, 581 N.W.2d 510, 515.

[¶15.]    In *Robert L. Kroenlein Trust v. Kirchhefer*, the Wyoming Supreme Court specifically examined whether the phrase "discovery of the fraud" in a statute on the wrongful taking of personal property means that the cause of action does not accrue "until the *actual* discovery of the fraud." 357 P.3d 1118, 1125 (Wyo. 2015). The court considered the legislature's purpose and objective in creating statutes of limitation and concluded that the term "discovery" means the time the fraud was actually discovered or could have been discovered. *Id.* at 1126. The court noted that it "has long been a discovery state, meaning a statute of limitations is triggered when a party knows or should have known his claim has accrued." *Id.* at 1127; *accord Yoder v. Weston*, 250 P. 522 (Okla. 1926) (determining that "[t]he phrase 'until the discovery of the fraud' as contained in said section of the statute does not necessarily mean until the party complaining had actual notice of the fraud alleged to have been committed, for it has been repeatedly held that constructive notice

thereof is sufficient to set the statute in motion, even though there may be no actual notice"). We likewise conclude that "discovery of the fraud" means that a fraud claim under SDCL 29A-1-106 accrues when a plaintiff has either actual or constructive notice of the fraud.

[¶16.] Actual notice is defined in SDCL 17-1-2 as "express information of a fact," and under SDCL 17-1-3, "[c]onstructive notice is imputed by the law to a person not having actual notice." We have further explained that "one having actual notice of circumstances sufficient to put a prudent person on inquiry about 'a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.'" *Strassburg*, 1998 S.D. 72, ¶ 10, 581 N.W.2d at 514 (quoting SDCL 17-1-4).

[¶17.] Here, the record reveals Clifford was not aware that Edward had died until August 2018, and he did not learn of the probate of the estate until approximately November 2018 when Gail Bickel told him about the probate action. We need not determine at what point Clifford had knowledge of sufficient facts to put him on constructive notice of a possible fraud because there is no dispute Clifford commenced his fraud action within two years of the date he learned of Edward's death. This date was the earliest point in time in which Clifford could conceivably be charged with constructive notice that Edward's estate had been distributed in a fraudulent manner.

[¶18.] We reject Melissa and Tina's argument that because "[a]t all relevant times, Clifford was the only one who knew that he was" Edward's son, he should have been more diligent in obtaining knowledge about Edward and his death by, for

example, maintaining a relationship with Edward or reaching out to his siblings earlier. Clifford did not have a duty to be more diligent in discovering the predicate facts giving rise to the alleged fraud. As the comments to the Uniform Probate Code explain, "the burden should not be on the heirs and devisees to check on the honesty of the other interested persons or fiduciary." Uniform Probate Code 1-106 cmt. (last amended in 2010). Although our Legislature did not adopt the comments to the Uniform Probate Code and they are not binding, we have previously explained that the comments can be helpful in the interpretation of statutes. *See, e.g.*, *In re Estate of Jetter*, 1997 S.D. 125, ¶ 12 n.3, 570 N.W.2d 26, 29 n.3. Because Clifford brought his claims based upon fraud within two years of August 2018 (when he learned of Edward's death), they were timely commenced under SDCL 29A-1-106.[5]

*b.   Breach of fiduciary duty and aiding and abetting the same*

[¶19.]    Clifford contends that his claims against Melissa for breach of fiduciary duty, and against Eddie and Tina for aiding and abetting the same, were timely instituted under SDCL 29A-3-1005. That statute provides that a claim against the personal representative must be "commenced within six months after

---

5.    Of further note, while SDCL 29A-1-106 authorizes those injured from fraud to obtain relief not only from the perpetrator of the fraud, but also from other persons benefitting from the fraud, the statute requires actions for restitution or other relief from persons who are *not the perpetrators* of the fraud to be commenced no later than five years after *the commission* of the fraud. Clifford alleges that the fraud occurred on February 21, 2014, when Melissa, Tina, and Eddie filed documents in connection with the probate proceeding affirming they were Edward's only heirs. The record reveals that Melissa, Eddie, and Tina were all served with the summons and complaint within five years of this date. Therefore, if a fraud is ultimately established, Clifford's claim for restitution or other appropriate relief against any of the three siblings, regardless of whether they are deemed perpetrators of the fraud, is also timely under this additional provision in SDCL 29A-1-106.

the filing of the closing statement" in the underlying probate proceeding.  *Id*.

According to Clifford, because Melissa did not file a closing statement in the

underlying probate proceeding (and has yet to file such a statement), the six-month

limitation period had not even commenced at the time he initiated his lawsuit.

[¶20.]     Melissa asserts that she did file a verified statement of informal

closing of Edward's estate on January 2, 2017, but she relies upon a document she

submitted to the circuit court *in Clifford's lawsuit*.  From our review of the probate

record, this document, which is consistent with what would typically be filed as a

closing statement, was not filed in the *probate proceeding*.  Because the limitation

period in SDCL 29A-3-1005 had not expired (or even begun to run) when Clifford

commenced his lawsuit, he timely commenced his breach of fiduciary duty claim

against Melissa.  As to the aiding and abetting claims, neither Tina nor Eddie have

argued that these claims are subject to a different limitation period.  Therefore, we

also apply SDCL 29A-3-1005 to the aiding and abetting claims and conclude they

were timely commenced.

### 2. *Whether genuine issues of material fact preclude summary judgment.*

#### a. *Improper distribution, fraud, and unjust enrichment*

[¶21.]     Clifford contends that summary judgment was improperly granted on

these claims because, in his view, there are material issues of fact in dispute on the

question whether Melissa, Tina, and Eddie perpetrated fraud in connection with the

probate of Edward's estate.[6]  In particular, he asserts that the evidence and reasonable inferences in the record support that Melissa, Tina, and Eddie were each aware that Edward had other potential heirs, including Tyler; they intentionally withheld this information from the probate court; they falsely represented to the court that they were Edward's only heirs; and their fraudulent conduct prevented Clifford from receiving his share of Edward's estate.

[¶22.]     This Court has not before examined what is meant by "fraud" in a claim for relief under SDCL 29A-1-106.  According to Clifford, his claims implicate both common law and extrinsic fraud.  We agree.  The statute is broadly written to cover fraud "perpetrated in connection with *any proceeding* or in *any statement* filed under this code" and fraud "used to avoid or circumvent the provisions or purposes of this code[.]"  SDCL 29A-1-106 (emphasis added).  Therefore, each type of fraud alleged here could apply to Clifford's claim under SDCL 29A-1-106.

*i. Extrinsic fraud*

[¶23.]     We explained extrinsic fraud in *Gifford v. Bowling*, as "fraud in the means whereby the judgment was procured, and not fraud in the cause of action or matter put in issue and presented for adjudication."  86 S.D. 615, 625–26, 200 N.W.2d 379, 384 (1972) (citation omitted).  As one court noted, "[t]he seminal

---

6.     Although filed as separate causes of action in his amended complaint, Clifford identifies in his reply brief to this Court that his improper distribution, fraud, and unjust enrichment claims are based on Melissa, Eddie, and Tina having acted fraudulently in having Edward's estate divided only between them.  Therefore, we examine them together.  It appears these separate claims were alleged to afford Clifford particular remedies if fraud is proven, but this appeal does not involve the issue of what remedies might be afforded if Clifford prevails.

definition of extrinsic fraud is found in" the United States Supreme Court's opinion in *United States v. Throckmorton*, 98 U.S. 61, 25 L. Ed. 93 (1878). *Estate of Sanders*, 710 P.2d 232, 236 (Cal. 1985). In *Throckmorton*, the Court offered the following scenarios that would constitute extrinsic fraud:

> Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised [sic] on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and fair hearing.

98 U.S. at 65–66. We have similarly defined extrinsic fraud to include instances such as "[k]eeping the unsuccessful party away from the court by a false promise, or purposely keeping him in ignorance of the suit . . . ."[7] *Reeves v. Reeves*, 24 S.D. 435, 123 N.W. 869, 871 (1909).

*ii. Common law fraud*

[¶24.]       To establish common law fraud, one must prove:

> [T]hat a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage.

---

7.    Our statutory law also recognizes extrinsic fraud when identifying instances in which a court may vacate a judgment or order. *See* SDCL 15-6-60(b)(3). However, this case does not involve a request to vacate a judgment or order of the court.

*N. Am. Truck & Trailer, Inc. v. M.C.I. Comm'n Servs., Inc.*, 2008 S.D. 45, ¶ 8, 751 N.W.2d 710, 713 (citation omitted). Although common law fraud is typically based on a representation made to the person to be deceived, in the probate context, the false representation is made to the court such that the injured party is prevented from participating in the probate proceeding. Thus, this type of common law fraud is similar to, if not the same as, extrinsic fraud, and the "other party" in this context is the court. Other courts have concluded the same. *See, e.g.*, *Eoff v. Forrest*, 789 P.2d 1262, 1267 n.2 (N.M. 1990) ("the 'other party' whose reliance is essential for a valid cause of action" is "the court to which the representation is made"); *Harkins v. Fielder*, 310 P.2d 423, 429 (Cal. Dist. Ct. App. 1957) (fraud claim not "limited so strictly as to require as a basis evidence of representations made directly to the one defrauded" (citation omitted)).

[¶25.] Clifford asserts that Eddie, Tina, and Melissa each acted fraudulently, and because the evidence differs somewhat with regard to each sibling, we address the claims against them separately.

### *Eddie*

[¶26.] Eddie does not dispute that he knew Clifford's first and last names and knew that Clifford was from Aberdeen. Eddie nevertheless asserts that his failure to disclose Clifford as a possible heir could not constitute fraud because he was not the personal representative of the estate with a duty to disclose. Eddie directs this Court to *Stevens v. Torregano*, 192 Cal. App. 2d 105, 123 (Cal. Ct. App. 1961), in which the California district court determined that mere silence of an heir does not "constitute either extrinsic mistake or extrinsic fraud." The court observed that

-14-

unlike the duties owed by an executor or administrator of an estate, "[a]n heir, devisee or legatee has been held to be under no duty *to notify another heir*, devisee or legatee of the death of the decedent, or of the probate proceedings." *Id.* (emphasis added).

[¶27.] Even if we were to apply this rule, this case is factually distinguishable from *Stevens*. The evidence in this case is not confined to mere silence on the part of Eddie, and this case does not concern whether Eddie had a *duty* to notify *Clifford* of the probate proceeding. Rather, the question in this case is whether Eddie affirmatively misrepresented to the probate court that he, Melissa, and Tina were Edward's only heirs with the intention of keeping Clifford from participating in the probate proceeding. On that question, there is no dispute that Eddie signed and filed a bond waiver and renunciation of appointment as personal representative stating that he, Melissa, and Tina were Edward's only heirs, despite his knowledge of both Tyler and Clifford.

[¶28.] Eddie nevertheless claims that his signing and filing of these documents cannot amount to fraud upon the court because when he signed them he believed his representations—that he, Tina, and Melissa were the only heirs of Edward—to be true. He notes that although he had learned about Clifford through his father and had met Tyler before Edward's death, he did not believe that Clifford or Tyler were Edward's sons because Edward had told him that neither Tyler nor Clifford were his children. According to Eddie, Edward told him that he did not believe Tyler looked like him and that he (Edward) had obtained a blood test confirming that Clifford was not his son. Clifford counters that if Eddie had really

believed Clifford was not Edward's son, he failed to disclose as much to Clifford

when Clifford began establishing a relationship with Eddie in 2018, and his actions

toward Clifford suggested otherwise.

[¶29.]     It is well settled that on summary judgment, we are not free "to weigh

the evidence and determine the matters' truth." *Hanna*, 2020 S.D. 33, ¶ 37, 945

N.W.2d at 545 (citation omitted).  Therefore, what Eddie believed to be true is not

for this Court to decide.  Rather, we must view the evidence and all reasonable

inferences drawn therefrom in a light most favorable to the nonmoving party, *see id.*

¶ 21, 945 N.W.2d at 541, to determine whether Clifford identified a material issue

of fact in dispute on the question of fraud, *see Liebig v. Kirchoff*, 2014 S.D. 53, ¶ 13,

851 N.W.2d 743, 747 (noting the summary judgment burden on a fraud claim).

[¶30.]     Our review of the record reveals there are material issues of fact in

dispute on the question whether Eddie perpetrated fraud in connection with his

statements filed in the probate proceeding and whether, as a result, Clifford was

kept ignorant of the suit and away from the probate court.  Eddie knew that a

"Clifford Olson in Aberdeen" could be Edward's son.  Moreover, he also knew about

Tyler *before* Edward's death and interacted with Clifford and Tyler as if they were

in fact Edward's sons.  The record further shows that Eddie had shared his

knowledge of Clifford with Tyler.  Yet in the probate proceeding, Eddie made a

representation of fact that he, Melissa, and Tina were Edward's only heirs.

[¶31.]     Although not directly on point, similar circumstances were examined

in *Harkins*, 310 P.2d at 428.  In *Harkins*, an heir, Oscar, failed to inform the

attorneys hired to handle the administration of the estate of his knowledge that

other heirs (half brothers and sisters) existed when they interviewed him. *Id.* Just as Eddie did in this case, Oscar signed a statement prepared by the attorneys in conjunction with an application for appointment of an administrator and filed with the court that falsely identified Oscar as the sole heir. The California court noted that "[w]hile there are many varieties, facets and shadings of extrinsic fraud, a familiar example consists of deceptive conduct on the part of the distributee of an estate which has kept other interested parties away from court by some fraudulent artifice or wilfull suppression of material facts." *Id.* The court further noted that even though Oscar was not acting in a fiduciary capacity, "one who speaks is not only obligated to tell the truth but he is equally bound not to suppress or conceal any facts within his knowledge which materially qualify those stated." *Id.* at 429.

[¶32.] Ultimately, the court concluded that Oscar's conduct constituted a fraud upon the court and had the effect of depriving the plaintiffs of notice of the hearing. *Id.*; *see also In re Bailey's Estate*, 238 N.W. 845, 848–49 (Wis. 1931) (involving similar facts and broadly noting that the suppression of material facts "by those who claimed the estate and who knew the facts, and that the general order of distribution was entered upon a mistaken notion of the fact" can constitute fraud); *In re Cisneros*, 430 P.2d 86, 89 (Colo. 1967) (determining that a court erred in summarily dismissing a fraud complaint involving an heir who represented to the probate court in a petition to determine heirship that he and his brother were the only heirs of the decedent even when the evidence established that he knew the heirs included the decedent's wife and other children).

[¶33.] So too here, Clifford has identified evidence supporting that Eddie falsely represented that he, Melissa, and Tina were Edward's only heirs, and that he did so with the intent to keep other potential heirs ignorant of the probate proceeding, thereby excluding them from the distribution of Edward's estate. *See N. Am. Truck & Trailer*, 2008 S.D. 45, ¶ 8, 751 N.W.2d at 713 (common law fraud); *Reeves*, 24 S.D. 435, 123 N.W. at 871 (extrinsic fraud). Notably, "[f]raud, like any other fact, may be inferred from circumstantial evidence." *Harkins*, 310 P.2d at 429; *see Funke v. Holland Furnace Co.*, 78 S.D. 374, 378, 102 N.W.2d 668, 670 (1960) (although fraud is not presumed, "[l]ike other issues of fact it may be established by inference arising from all the other facts and circumstances in evidence"). Thus, accepting Clifford's evidence and the reasonable inferences drawn therefrom, the circuit court erred in granting summary judgment on Clifford's fraud-based claims against Eddie.

### *Tina*

[¶34.] Tina had less knowledge about Clifford than Eddie. However, the evidence shows that Tina maintained a relationship with Edward in her adulthood during which she learned details about his life. Importantly, in a message between Tina and Clifford in September 2018, Tina told Clifford that "Dad talked about there being another boy a couple of times, one in Aberdeen. And that sure seems like you so he probably said that to Eddie also." Given Tina's statement that she knew of another boy in Aberdeen, coupled with her knowledge of Tyler and interactions with him, there is evidence from which it can be inferred that she falsely represented to the court that she, Eddie, and Melissa were Edward's only

heirs. Also, given the evidence that Tina was aware that Tyler was a potential heir when she filed this statement with the court, it can be inferred that Tina made a false representation with the intent to keep other heirs, including the other "boy in Aberdeen," ignorant of the administration of Edward's estate. Therefore, just as with Eddie, the circuit court erred in granting summary judgment as to the fraud-based claims against Tina.

*Melissa*

[¶35.]     The evidence relevant to Melissa's knowledge of Clifford is based on a message between Melissa and Tyler in 2010 via Facebook wherein Melissa told Tyler that she "had heard that [Edward] might have two more children – you (I believe) and another boy somewhere." Melissa also testified that one night while she was living with Edward, he had told her that he would not be surprised "if there were other little Bickel's [sic] out there." Melissa explained that Edward was intoxicated at the time and claimed that she did not reply or inquire further. Although the evidence of Melissa's knowledge of Clifford is more equivocal and less detailed than Tina's and Eddie's knowledge, Clifford nevertheless contends it is reasonable to infer that Melissa knew about Clifford. In his view, such an inference is reasonable because Melissa, Tina, and Eddie must have shared information with each other about the existence of other heirs when the three siblings had a discussion about Tyler after he made contact with them and when, after Edward died, they met together at the probate attorney's office.[8]

---

8.     Melissa testified that the probate attorney has since retired from the practice of law. The record does not contain testimony or evidence outside of the

(continued . . .)

[¶36.] But Melissa testified that no discussion occurred in the attorney's office about other heirs, and she specifically denied that she had asked Eddie or Tina about whether other possible children existed. She also denied that either Eddie or Tina volunteered information to her about other heirs, and both Eddie and Tina similarly denied having such a conversation before or during the probate proceeding. Moreover, although there is no question they had discussions about Tyler and did not disclose to the probate court that Tyler was a possible heir, we would have to engage in speculation to surmise from this conduct that there might have been a discussion amongst the siblings about other possible heirs and that Eddie and Tina shared the information they had about Clifford with Melissa.[9]

[¶37.] As this Court has said, "[s]peculation and innuendo, however, are not enough to raise a genuine issue of material fact." *Schwaiger v. Avera Queen of Peace Health Services*, 2006 S.D. 44, ¶ 13, 714 N.W.2d 874, 880. Moreover, "cases of fraud and deceit require a higher degree of specificity in order to avert summary judgment." *Schwaiger v. Mitchell Radiology Assoc.*, 2002 S.D. 97, ¶ 14, 652 N.W.2d 372, *abrogated on other grounds as recognized by Poeppel v. Lester*, 2013 S.D. 17, 827 N.W.2d 580. Without specific material facts from which it can reasonably be inferred that Melissa had specific knowledge of Clifford (beyond a mere possibility),

_____

(. . . continued)
     siblings' testimony regarding what conversations did or did not transpire in the attorney's office.

9.     It is troubling that Melissa knew of Tyler's claim that he was Edward's son, and yet she did not identify him and give him notice of the probate proceeding. However, by itself, this fact is insufficient to support a reasonable inference that she knew of *Clifford*.

Clifford cannot prevent summary judgment on his claim that Melissa perpetrated fraud as described in SDCL 29A-1-106.[10]

[¶38.] While Clifford has failed to identify a genuine issue of material fact to support his claim that Melissa was a perpetrator of the fraud, the provisions of SDCL 29A-1-106 are broader and permit a defrauded party to obtain "restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not." Thus, despite the absence of facts showing Melissa was a perpetrator of the fraud, she remains a party for restitution purposes in the fraud-based claims under SDCL 29A-1-106, as there is evidence that Melissa may have benefitted from the alleged fraud by Tina and Eddie. Therefore, we affirm the dismissal of the direct fraud claim against Melissa but reverse the court's dismissal of Melissa as a party to the action.

> b. *Breach of fiduciary duty and aiding and abetting breach of fiduciary duty*
>
> i. *Breach of fiduciary duty*

---

10. On appeal, Clifford contends that his fraud claim against Melissa also "functions as a fraudulent concealment claim[.]" Fraudulent concealment is a form of deceit and is defined in SDCL 20-10-2(3) as "[t]he suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact[.]" Clifford claims that because Melissa was the personal representative, she owed a "duty to disclose" her knowledge of other persons interested in the estate. However, as with the other fraud claims against the defendants collectively, Clifford must identify evidence to support that Melissa had knowledge of him. *See Conway v. Conway*, 487 N.W.2d 21, 24 (S.D. 1992) (the duty to disclose concerns known facts). Nevertheless, although Clifford has not identified evidence in the record supporting a fraud claim against Melissa, the crux of his argument relating to her duties as the personal representative of the estate are addressed in our analysis of why summary judgment was improper on his breach of fiduciary claim.

[¶39.]        To establish a valid claim for a breach of a fiduciary duty, Clifford

must first prove that Melissa was acting as his fiduciary.  The existence of a

fiduciary duty and the scope of that duty are questions of law for the Court.  *Chem-*

*Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 37, 652 N.W.2d 756, 772.  As described

in SDCL 29A-3-703(a),

> A personal representative is a fiduciary who, except as otherwise
> provided in the will, shall observe the standards of care in
> dealing with the estate assets that would be observed by a
> prudent person dealing with the property of another.  A personal
> representative is under a duty to settle and distribute the estate
> of the decedent in accordance with the terms of any probated
> and effective will and this code, and as expeditiously and
> efficiently as is consistent with the best interests of the estate.

Relevant here, Melissa had a duty to "give information of the appointment to the

heirs and devisees . . . whose address is reasonably available to the personal

representative."  SDCL 29A-3-705(a), (b).  This Court has also explained that "[a]

personal representative is obligated to use the same care and skill in managing an

estate that a reasonably prudent man would utilize in the management of his own

affairs."  *Ward v. Lange*, 1996 S.D. 113, ¶ 15, 553 N.W.2d 246, 251 (citation

omitted); *see In re Estate of Alexander*, 758 A.2d 182, 187 (Pa. 2000) (providing that

the duty to act with reasonable diligence means the personal representative "would

make an honest effort to determine those persons lawfully entitled to the estate").

A "failure to give the information is a breach of duty to the persons concerned . . . ."

SDCL 29A-3-705(d).

[¶40.]        According to Clifford, Melissa breached her duty to give him notice

when she failed to exercise reasonable diligence to determine whether other

suspected heirs existed.  He argues that because Edward told Melissa there could be

other Bickel children, she could have done more as it relates to her duty to ascertain the existence of heirs. In particular, he faults Melissa for not asking the probate attorney whether Tyler should have received notice and for not asking Eddie or Tina or other family members whether they knew of other heirs. He further claims that had Melissa inquired with the Department of Social Services or any clerk of court, she likely would have learned about Clifford because a child support order was issued in 1981 requiring Edward to pay monthly child support and past arrears for Clifford's benefit.

[¶41.] In response, Melissa asserts that she fulfilled all of her statutory duties as personal representative. She claims that she identified in her application for appointment the heirs of which she was aware and mailed the notice to the heirs and other persons whom she knew had or may have an interest in the estate. She also highlights that notice of the probate was filed in the Corson County newspaper.

[¶42.] Notably, under SDCL 29A-3-301, Melissa was required to include in her application for informal appointment the names and addresses of the heirs known to her or "*ascertainable with reasonable diligence*[.]" (Emphasis added.) It is undisputed she did not include Tyler's name in this application, and there is evidence in the record suggesting that at that time, she and her siblings believed Tyler was their sibling. While she contends there is no evidence that she had any identifying information from which she could have ascertained Clifford's name and address, the question at this juncture is whether there are material issues of fact in dispute on the question whether she breached her fiduciary duty to ascertain, with reasonable diligence, the existence and whereabouts of other possible heirs. There

is evidence in the record that Melissa had general knowledge of such, but she did not advise the probate attorney that other heirs may exist and did not take any steps to ascertain whether Tyler was in fact an heir or seek further information regarding the other possible son she had mentioned to Tyler. Therefore, there are material issues of fact in dispute as to whether the knowledge she did have should have prompted further inquiry, and the circuit court erred in granting summary judgment on this claim.

### ii. Aiding and abetting breach of fiduciary duty

[¶43.] In *Chem-Age*, we held "that to establish a cause of action for aiding or assisting in the breach of a fiduciary duty, a plaintiff must prove that (1) the fiduciary breached an obligation to plaintiff; (2) defendant substantially assisted the fiduciary in the achievement of the breach; (3) defendant knew that the fiduciary's conduct constituted a breach of duty; and (4) damages were sustained as a result of the breach." 2002 S.D. 122, ¶ 46, 652 N.W.2d at 775. Substantial assistance requires evidence that the defendant "actively participate in the breach of a fiduciary duty." *Id.* ¶ 44, 652 N.W.2d at 774. Further, "[k]nowing participation in a fiduciary's breach of duty requires both knowledge of the fiduciary's status as a fiduciary and knowledge that the fiduciary's conduct contravenes a fiduciary duty." *Id.* ¶ 45, 652 N.W.2d at 775.

[¶44.] Clifford argues that Tina and Eddie knew Melissa was required to act as a fiduciary and knew that Melissa failed to disclose at least one potential heir to the probate court. He further contends that Tina and Eddie substantially assisted in Melissa's breach by affirmatively representing to the probate court that they

were Edward's only heirs. In response, Tina claims that the aiding and abetting claim fails as a matter of law because there is no evidence that Melissa knew of Clifford, and thus, she did not breach her fiduciary duties. For his part, Eddie contends that his signing of the bond waiver and renunciation of appointment did not have anything to do with identifying heirs and therefore could not constitute substantial assistance. He further asserts that the record contains no evidence that he actively and knowingly assisted Melissa in excluding Clifford from the proceedings.

[¶45.]     Because we have determined that there are material issues of fact in dispute as to whether Melissa breached her fiduciary obligation to Clifford, there are likewise material issues of disputed fact precluding summary judgment on the claim that Tina and Eddie aided and abetted Melissa's breach. It is undisputed that all three siblings met with the probate attorney after Edward's death. They made the collective decision that Melissa act as the personal representative, and each signed statements declaring that they were Edward's only heirs. They did this at a time when, as evidence in the record suggests, they believed Tyler was Edward's heir, yet they did not disclose him. It can reasonably be inferred from this conduct, along with the evidence of Eddie's and Tina's collective knowledge of the name and general location of another son besides Tyler, that Tina and Eddie knowingly assisted Melissa in breaching her duty to distribute Edward's estate to all those entitled to a share of the estate property. Eddie's and Tina's silence as to their knowledge about another heir, along with their affirmation in a statement filed with the court that they were the only heirs, could constitute substantial

assistance supporting an aiding and abetting claim.  Therefore, the circuit court erred in granting summary judgment on this claim.

[¶46.]     Affirmed in part, reversed in part, and remanded.

[¶47.]     JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.